Wellborn *vs.* Weaver *et al.*

No. 50.—C. T. WELLBORN, plaintiff in error, *vs.* W. W. WEAVER and others, defendants.

[1.] A new trial will not be granted because the verdict of the Jury is contrary to the charge of the Court, if the verdict be according to law, and the charge against it.

[2.] To make the saving in the Statute of Limitations, in favor of *femes coverts* available, they must be actually married at the time the right of action accrues.

[3.] Marriage may be postponed, but not the Statute of Limitations.

[4.] If negroes, belonging to a *feme sole*, are converted before marriage, the law transfers the property and right of possession to the husband; and he, alone, must sue.

[5.] A deed, signed, sealed and delivered to a third person, *as the agent of the grantor*, to be recorded and kept by him till the death of the grantor, and then to be delivered to the grantees, is not the present deed of the grantor; neither is it an *escrow*, but a testamentary paper, and must be proved as such before title to personal property can be derived under it.

[6.] *Wheelright vs. Wheelright*, (2 *Mass. R.* 417,) examined and disapproved.

[7.] A deed takes effect from delivery, which may be by words, or by acts without words; and to the grantee or to a third person, without especial authority from the grantee to receive the same.

[8.] It is not essential to the delivery of a deed, that the grantee be present, personally, to accept the same.

[9.] The mere retention of a deed by the grantor, will not affect its validity, unless agreed and understood, at the time, that the deed is not to pass out of the grantor's possession.

[10.] A naked power, uncoupled with an interest, is determined by the death of the principal.

[11.] Delivery is no less essential to an *escrow* than a deed.

[12.] Distinction between a deed and an *escrow*.

[13.] The act of registering a deed does not amount, necessarily, to a delivery—when placed on record by the grantor or by his direction, it is only *prima facie* evidence of delivery, and may be explained or rebutted.

[14.] Whether an instrument be a deed or a will, does not depend upon its form or manner of execution, but upon its operation.

[15.] The intention of the maker may be ascertained, not only from the instrument itself, but from extrinsic evidence.

Trover, in Coweta Superior Court. Tried before Judge WARNER, September Term, 1854.

This was an action to recover two negroes, a woman and her son, brought by the plaintiffs, children of the wife of defendant by a former marriage, against C. T. Wellborn.

The negroes had formerly been the property of Joshua Elder, deceased. He delivered them to his daughter Sarah, on her marriage with one Seaborn B. Garnett, the father of plaintiffs. As to whether she took them as a loan or gift, there was much conflicting testimony. The negroes remained in her possession until after Garnett's death, and until within a few days of Mrs. Garnett's marriage to Wellborn, the defendant, which was in 1838, when they were taken away from her by Joshua Elder. In 1842, Joshua Elder executed a deed of gift, in the usual form, conveying the negroes to the plaintiffs. This deed he gave to one of the subscribing witnesses, with instructions to have it recorded and to hold it as his, Elder's agent, until he, Elder, should be dead, and then to deliver it to the donees; which the person to whom it was intrusted did, as directed. This deed and the circumstances of its delivery were in evidence.

The negroes continued in the possession of Joshua Elder until 1850, when he sent the negro woman to defendant's, to wait on his, defendant's, wife; and the boy afterwards ran away and went to defendant's who refused to give him up. Joshua Elder died in 1851, and 'this suit was instituted by the children of defendant's wife, the donees in the deed above mentioned, to recover the property, and the facts aforesaid appeared in evidence. The Jury found a verdict for the plaintiffs; whereupon, defendant moved for a new trial, stating in his rule the following grounds: 1st. Because the verdict is contrary to the evidence and the charge of the Court, the Court having charged the Jury, among other things, that if they believed, from the evidence, that Joshua Elder had given the property in dispute to Mrs. Garnett, afterwards Mrs. Wellborn, before her marriage with defendant; and that said Elder took possession of the said property, on the day of the marriage, or so shortly before that there was not a sufficient reasonable time for Mrs.

Garnett (now Mrs. Wellborn) to have instituted suit in her own right against said Elder, before her marriage with defendant, for said property; that in that case, the Statute of Limitations would not commence to run against the rights of Mrs. Garnett, (now Mrs. Wellborn); as before stated, the property being in her own right, and she being a *feme covert*, the Statute would not run during her coverture.

2d. And further contrary to the charge of the Court and the evidence in this: the Court having charged the Jury, among other things, that if they should be of the opinion, from the evidence, that it was a gift from Elder to Mrs. Garnett (now Mrs. Wellborn) as before stated; and also, that the Statute of Limitations did commence to run against the rights of Mrs. Garnett (afterwards Mrs. Wellborn) when Elder took possession of the property in 1838; that they should find for the defendant, unless they should be of the opinion, further, from the evidence, that Elder had had the possession of the property, and held the same adversely to the rights of Mrs. Garnett, afterwards Mrs. Wellborn, for four years before he conveyed the same to the plaintiffs.

3d. Because the Court erred in refusing to charge the Jury, that the paper which was relied on by plaintiffs as title in them, was testamentary in its character and effect, and could not be proof of title in plaintiffs, without first being proven in the Court of Ordinary, according to law.

4th. Because the Court erred in charging the Jury, that the said paper was not testamentary under the evidence adduced in this case, and in order to make it so, it must appear to be such from the paper itself.

5th. Because the Court erred in admitting the evidence of Asa Chandler and others, to prove the declarations of Elder before the making the deed to plaintiffs, said evidence being objected to by defendant's Counsel, at the time it was offered and admitted by the Court; the declarations being made while in possession of the property and exercising acts of ownership over it, showing title in himself.

Which motion for a new trial was over-ruled by the Court, and on this decision error is assigned.

SIMS & HAMMOND; BUCHANAN, for plaintiff.

DOYAL; SPEER, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] A new trial will not be granted, because the verdict of the Jury is contrary to the charge of the Court, provided the verdict is according to law and the charge is against it.

[2.] Now we are clear that the saving in the Statute of Limitations in favor of *feme coverts*, does not apply where the *feme* was dis-*covert* at the time her right of action accrued, notwithstanding she may have married, subsequently, on the same day.

[3.] In other words, *marriage* may be postponed, but not the Statute of Limitations. And then the Act of 1817, (*Cobb's Digest*, 567,) which stops the running of the Statute as to idiots, lunatics and infants, does not extend to married women, notwithstanding the intervening disability of coverture.

[4.] Moreover, the negroes in dispute were taken possession of by Joshua Elder before the marriage of his daughter, Mrs. Garnett, with Wellborn, the defendant; and that being so, the better opinion is, not only that Wellborn *might* have sued, alone, but that he *must* have done so. And the reason assigned is, because the law transfers the property to him, and the wife had no interest in it. (See 1 *Chitty's Blackstone*, note, *p.* 360. *Bacon's Abr. Title Detinue, A. Buller's Nisi Prius*, 50. 1 *Salk.* 164. *Sed Contra. Reports Tem. p. Harder*, 120.)

If this be so, not only did the Statute of Limitations begin to run against the wife *dum sola* and continued, albeit the intervening coverture; but it commenced to run against the husband also, from the time of the marriage, which makes the

Statutory title of Joshua Elder and those claiming under him complete.

[5.] What is the true character of the paper executed by Joshua Elder to his grand-children? Is it a deed or a testament? There is a conflict of authority upon this point; and our opinion has not been formed without some hesitancy.

[6.] The Circuit Court held that it was a deed, and the current of American cases is certainly with the decision. *Wheelright vs. Wheelright*, 2 *Mass R.* 447, is the leading authority on that side, and has been cited and followed as law, without questioning, in all the subsequent adjudications. It was an application for partition. The petitioners produced, in support of their claim, two deeds purporting to be conveyances of the premises; and the dispute was, whether or not the circumstances attending their execution amounted to a *delivery*, which it was admitted was essential to their operation. The evidence was this: Nathaniel Wells, Esq. testified, that in the year 1795, Joseph Wheelright, one of the petitioners, requested him, by direction from his father, *as he said,* to write these two deeds; that having written them, the father called upon him and signed and sealed the two deeds in the presence of the witnesses and his brother, since deceased, and delivered them to him for *the use of the grantees;* that it was the intent of the parties that the grantor should have the use of the premises during his life; and as some of the grantees were minors, and could not secure the use to him, the deeds were delivered as *escrows,* as he expressed it, to be delivered, by him, to the grantees, upon the death of the grantor, which the witness had accordingly done.

Upon this proof, Chief Justice *Parsons* conceded that the objection, that the testimony did not sufficiently show that these deeds were delivered by the grantor, in his life time, to the grantees or any person authorized by them to receive the same, deserved much consideration. Still, he held the law to be well settled, that if the grantor deliver any writing, as his deed, to a third person, to be delivered over, by him, to the grantee, on some future event, it is the grantee's deed present-

ly, and the third person is the trustee of it for the grantee. And in support of this conclusion, the learned Chief Justice. refers to *Perkins,* 143–'4, *and Bushell vs. Pasmore,* (6 *Modern,* 217–'8.)

I would merely remark, that in all the cases quoted, the papers were delivered, confessedly, as *escrows.*

In the second edition of the *Massachusetts Reports,* the propriety of this opinion is *doubted,* in the modest form of a *Quere* appended in a note to the case, by the editor, Mr. Rand.

[7.] Can it be sustained upon principle? We do not controvert the doctrine, that all such acts as give estates directly. or by way of use, are good at first, and that the thing granted, when the deed of grant is delivered to the grantee's use, shall vest in the grantee before he has notice of the grant, or agree to accept of the thing granted; so that, if lands be granted immediately, by feoffment, gift, &c. the thing granted shall be said to be in the grantee, and the grant good before notice or agreement, until disagreement. (*Shep. Touch.* 285. 2 *Ventris,* 198. *Shoner,* 308.) That every man is presumed to assent to a grant made for his benefit. (1 *Bonn.* 502–'3, *and* 518,. 520.) That while it is true that a deed takes effect from the delivery, which may be by words without act, or by acts without words; that such delivery may be either to the grantee or to a third person, who has no special authority, for the use of the grantee. (*Shep. Touch.* 57 *and* 58. *Cowper's R.* 204. 12 *Johns.* 536. 1 *N. H. R.* 357.)

[8.] And farther, that it is not essential to the valid delivery of a deed, that the grantee be present and that it be accepted by him, personally. (12 *Johns.* 536. 12 *Mass. R.* 460. 17 *do.* 220. 9 *do.* 310. *Shep. Touch.* 58.)

[9.] Moreover, we admit that the mere retention of the deed. by the grantor, of itself, will not affect its validity, unless it be declared or understood, at the time of its execution, that the deed is not to pass out of the possession of the grantor. (9 *East.*. 360. 1 *P. Wms.* 577. 2 *ditto* 358. *Pre. on Chancery,* 182.. 2 *Vernon,* 473. 1 *Bro. Par. Cas.* 122. 1 *Ves.* 314.)

Still, the inquiry recurs, does the delivery of a writing as a

deed, to a third person, *as the agent of the grantor*, to hold during the life of the grantor, and to be delivered at his death to the grantees, operate as the deed of the grantor *presently ?*

It is clear, from the testimony, that William B. Brown, to whom the paper was delivered, was not the agent of both parties, much less the trustee for the use of the grantees, which Wells, the witness, was assumed to have been by the proof in the case of *Wheelrights.* On the contrary, Brown held the deed subject to the control of Joshua Elder, *as his agent,* and countermandable by him, retaining, as he did and intended to do, the absolute power over it. The grantees could, by no act on their part, entitle themselves to the deed. The grantor never parted with the dominion over the title to the negroes; and the possession of Brown, his agent, was, in judgment and contemplation of law, the possession of Elder, the principal.

[10.] Conceding, then, that Elder intended to vest Brown with authority to deliver this deed after his death, and deposited it with him for the sole purpose of enabling him to do so, is this an *actual* delivery of the deed ? For while an authority to deliver may be revoked and is absolutely determined by death, the *delivery* itself cannot be recalled. A deed delivered is out of the reach of the grantor.

Did the grantees—the grand-children—acquire any title to the negroes until the deed was delivered to them after the death of Joshua Elder, the grantor ? Did Joshua Elder divest himself of the title to the slaves, by depositing the deed with his agent, subject exclusively to his own control, and in no event to be delivered till after his death ? Brown had no authority to deliver the deed during the life of Elder. He was expressly restrained from doing this. Had he done it his delivery would have been void, not being in pursuance of his authority. He had only a *naked power* to deliver the deed, after the death of the grantor. Could Elder create such an authority to be executed after his death, uncoupled with an interest ? No man can, we apprehend, by deed, much less by parol, create a *naked power*, which shall survive him. For al-

though the authority may, by its terms, be unlimited, it is, nevertheless, determined by the death of the principal. (*Coke Litt.* 52, *b.* 4 *Bo. Ch. Cas.* 271.)

These authorities and numerous others, which might be cited to the same effect, establish the foregoing position. Brown's authority, then, was determined by the death of Elder, and the delivery after was void. Signing, sealing and the delivery of a deed, may either or all be performed by an Attorney. They must be done, however, in the life time of the grantor. If the grantor, after the execution of a deed, puts it in his scrutoire or hands it to his agent, declaring, at the same time, that it is not to be delivered till his death, it is inoperative as a deed, for want of actual tradition.

[11.] And it by no means relieves the difficulty, by considering this instrument as an *escrow.* Delivery is as essential to an *escrow* as to a *deed ;* the only difference being, that in one case the grantor makes the delivery to the grantee, and in the other to a stranger or third person. In either case, until the grantor makes the delivery, the instrument is a dead letter. (*Perkins*, 137, 138. 2 *Johns. R.* 248.)

[12.] Generally, an *escrow* takes effect from the second delivery, and is to be considered the deed of the party from that time. But this general rule does not apply when justice requires a resort to fiction. The relation back to the first delivery, so as to give the deed effect from that time, is allowed, in cases of necessity, to avoid injury to the operation of the deed, from events happening between the first and second delivery. When one makes a deed and delivers it as an *escrow,* and dies ; or in the case of a *feme sole,* marries before the second delivery, the relation back to the time when the grantor was in life, or the *feme* was *sole,* is necessary to render the deed valid. (2 *Bl. Com.* 307. 13 *Viner's Ab.* 29. *Cruise's Digest, l.* 32. *C.* 2, §87 *to* 91. *Com. Dig. Fait* (*A.* 3.)

And upon these excepted cases, Judge PARSONS put his decision, in *Wheelright vs. Wheelright,* and decided, that a writing delivered to another by the grantor, (not as his deed) to be delivered to the grantees, after the death of the grantor,

becomes the deed of the grantor, by such second delivery, from the time of the first delivery.

But was this instrument deposited in the hands of Brown as an *escrow?* In every case of an escrow there is a contract and privity between the grantor and grantees. The person to whom the deed is delivered is, by mutual agreement, constituted the agent of both parties. He does not hold the deed, subject to the control of the grantor. He has no power over it, and can no more countermand the delivery of an escrow than of an absolute deed. And it is always in the power of the grantee to entitle himself to the deed and to the estate, by performing the stipulated condition. And when performed, the deed takes its whole effect by force of the first delivery, without any new delivery. (*Penyman's Case,* 5 *Coke,* 84, *b.*) But here no money was to be paid—no condition to be performed. The delivery was dependent merely upon the lapse of time. In such a case, is it necessary or proper to resort to a violent fiction, *ut res valeat, &c.?*

In every one of the excepted cases cited by Judge PARSONS, there was a condition to be performed, as a part of the contract, and that, too, for a valuable consideration. Under such circumstances, there may be some propriety of putting a case in this class of exceptions. But such was not the case of *Wheelright;* neither is it the case before us. We say this with all possible respect for the eminent Lawyer who made that decision.

[13.] Being satisfied that the act of registering a deed does not amount to such a delivery of it as will transfer the title from the grantor to the grantee, and that it being placed on the record by the direction of the grantor, is, at most, but *prima facie* evidence of its delivery, which may be and is effectually explained and rebutted by the testimony of plaintiffs themselves, it appears to us unnecessary to enter into a minute investigation of the doctrine upon this subject.

[14.] Whether an instrument be a deed or will, does not depend on its form or manner of execution, but upon its operation, has been repeatedly ruled by this Court. If it is not to

operate till after the death of him who makes it, it is a will, whatever be its form. A deed, if made with a view to the disposition of a man's estate, after his death, will inure, in law, as a devise or will. (*Shergold vs. Shergold*, 1 *Phillom's R.* 10, note (*h*.) *Warwich vs. Taylor Ib.* note (*i*.) *Therold vs. Therold, Ib. p.* 1. *Green vs. Proude,* 1 *Mod. R.* 117. *Peacock vs. Monk,* 1 *Ves. Jr.* 132. *Heekson vs. Wetham,* 1 *Ch. Cas.* 248. *Metham vs. The Duke of Devonshire,* 1 *Pieere W.* 829. *Healey vs. Copley,* 7 *Bro. Par. Cas. by Tom.* 496. *Attorney General vs. Jones,* 3 *Price,* 358. *Dyer,* 314. 6 *Pl.* 97. *Powell on Devises, by Jarman, vol.* 1, *pp.* 10, 52, notes. 1 *Roberts on Wills, p.* 145.)

In *Habergham vs. Vincent,* 2 *Vesey, Jr.* 204, this whole subject was elaborately discussed and the law deliberately settled as here stated. All the authorities that bear on this question are there collected, on which that profound Lawyer, Justice *Buller,* says : "These cases have established, that an instrument in any form, whether a deed, poll or indenture, if the obvious purport is not to take place till after the death of the person making it, shall operate as a will. The cases for that, are both at Law and in Equity ; and in one of these there were express words of immediate grant, and a consideration to support it as a grant; but as, upon the whole, the intention was, that it should have a future operation, after death, it was considered as a will." (*p.* 231.)

[15.] It was held by the Circuit Judge, that an instrument which is in form a deed, cannot be converted into a will, unless it appears, from its face, that it was not to operate till after the death of the grantor. But the authorities do not warrant this distinction. On the contrary, it has been repeatedly held, that the intention of the maker may be ascertained, not only from the instrument, but from extrinsic testimony. (1 *Modern R.* 117. 2 *Nott & McCord,* 531. *Milledge vs. Lamar,* 4 *Dess.* 617. *Habergham vs. Vincent,* 2 *Ves. Jr.* 204, 231. *Rigden vs. Volier,* 2 *Ves. Sr.* 255, 258.)

The result of the whole matter is, then, that the plaintiffs cannot claim title to the property in suit, under this instrument,

as a deed; but that if valid at all, it must be as a testamentary paper, and be proved accordingly.

We see no error in the Court in allowing the testimony of Chandler to be introduced, as to the claim of title to the negroes by Elder, while he had them in possession, not that he could actually create title in himself by such declarations, but they served to rebut the presumption, that he held as trustee for his daughter; and thus, answered the purpose of fortifying his possessory title.