GORDON, governor, *v.* TRIMMIER.

1. If a husband, being the owner of two adjacent town lots, execute to his wife a deed embracing both, though using in the description the number of one of them only, this would be a conveyance of both, provided the deed was delivered; but if not, it would convey neither. Recording the deed, or having it recorded, would be sufficient, but not conclusive, evidence of delivery. If, notwithstanding the recording, it be shown affirmatively that there was really no delivery, and that the intention to deliver was abandoned, the deed would be inoperative. Should the deed embrace only one of the lots, it would convey no more, and the same rule as to delivery would, of course, apply.

2. If a father was the owner of two adjacent town lots lying in the angle formed by the junction of a street with an alley, and conveyed to his daughter certain premises (not specifying the quantity or dimensions) described as lying in that angle but designated by a number not corresponding with the number of either

of the lots, and afterwards died intestate, the presumption is that he misdescribed the number of the lot which he intended to convey, but there is no presumption that he intended to convey both lots, although they were inclosed together and his residence was located on one or both of them. His intention in this respect would be open to determination by extrinsic evidence of all relevant facts and circumstances. If he intended to convey both, although he specified but a single number, the daughter would acquire title to both. If, however, he intended to convey only one, and afterwards died intestate still owning the other, his widow, unless she took dower, would inherit from him at least one fifth undivided interest in the other, and this would be subject to levy and sale as her property under a judgment against her.

3. Whilst a claim case is pending, an incomplete prescriptive term as between the claimant and the defendant in *fi. fa.* will not become complete as against the plaintiff in *fi. fa.*, the levy having been made and the claim interposed whilst prescription was running but before it had ripened.

April 3, 1893. Argued at the last term.

Before Judge MILNER. Catoosa superior court. August term, 1892.

R. J. & J. McCAMY, for plaintiff.

McCUTCHEN & SHUMATE, contra.

BLECKLEY, Chief Justice.

According to a map of the town of Ringgold, in evidence, three adjacent lots (filling the space between Buck alley and Mountain street), Nos. 40, 41 and 42, fronted on Middle street, and of these No. 40 was bounded on one side by Buck alley and lay immediately in the angle formed by the junction of that alley with Middle street. Next to this lot on the Middle street front was No. 41, and next to it was No. 42 which extended to Mountain street. Neither of these two lots touched Buck alley, the first being separated from it by No. 40, and the second by both 41 and 40. The map is silent as to the dimensions or extent of any of the lots. It is clear from other evidence that No. 42, the "Vincent land," was never owned by O. W. Trimmier, and is no part of the premises now in controversy. It is

conceded that the other two lots both belonged to him, but the only conveyance to him shown was a deed from Robert L. Barry, made in 1867, which described the premises thus : " Lot forty-one in the eastern division of the town of Ringgold, fronting on Middle street ninety feet, and running back two hundred and ten feet, more or less." There is no evidence as to whether ninety feet on Middle street would embrace two lots or only one. It does, appear, however, that O. W. Trimmier inclosed both lots together, and that his dwelling-house was within the inclosure. Which lot it was on, or whether partly on each, does not appear. In September, 1871, he conveyed to his wife by deed of gift, describing the premises thus : " All that part or parcel of land in the town of Ringgold known and distinguished as lot number forty-one, being the lot I bought from Robert L. Barry, whose deed of conveyance to me is recorded in Book —, page 53, of the land records of said county." This deed was duly recorded by himself on January 4th, 1873, he being then clerk of the superior court, the recording officer designated by law. There is no direct evidence of its delivery, and his widow testifies it was never actually delivered, nor was she informed of its execution or existence. On the 18th of January, 1873, fourteen days after he recorded the deed to his wife, he conveyed to his daughter Mary M., the claimant in this case, a lot described as follows : "Known as town lot number forty-two, in the eastern division of the town of Ringgold, and in the angle of Buck alley and Middle street." This deed, also, was duly recorded by him on the day of its execution, and there is evidence of its actual delivery.

The premises under levy as the property of Mrs. Trimmier, formerly the wife now the widow of O. W. Trimmier, are described in the levy thus : "Town lot in the town of Ringgold, Georgia, known as the Trimmier

property, fronting on Buck alley on the south, and on Middle street on the west, and lying west of Mrs. J. M. Comb's property and the jail lot, and south of the Gilbert Vincent property." The levy is dated October 28th, 1889, and the judgment on which it is founded was rendered in the previous month. O. W. Trimmier died in October, 1884, and up to that time resided with his family, including his wife and his daughter Mary M., on the premises embraced in his inclosure. It is certain he recognized the property, or some of it, as belonging to his wife, for he returned it for taxation as hers; and after her death it was returned in a similar manner by her son, down to and including the year of the levy. The evidence indicates that in some of the years the father, and after him the son, returned a part of the property, and a part only, as belonging to the daughter, the claimant. After the death of the husband and father, the family continued to reside on the premises, the daughter, as it would seem, claiming the whole, and the widow making no claim for herself but recognizing the daughter's title. She testifies that she never heard of the deed from her husband to herself until after the levy. The son could not explain why he returned as hers the land for taxation, but he ceased so returning it when the levy was made, and has since returned it all as the property of his sister, the claimant.

1. Under the evidence, it is quite impossible to tell whether the deed to Mrs. Trimmier covers both lots or only one. It is certain that it covers lot No. 41, but the doubt is whether it also embraces No. 40. If ninety feet front on Middle street would include both lots, the deed would convey both, although it, as well as the deed from Barry to which it refers, describes the premises as one lot and designates but one number. To make it effective at all, however, it would have to be delivered, not literally and manually, but substantially and virtually.

The recording of it would be sufficient, though not conclusive, evidence of such delivery. The inference arising from this fact could be overcome by affirmative evidence showing non-delivery in fact, and that the intention to deliver was abandoned. On this question the circumstantial evidence in the record bears in one direction, and most of the direct evidence in the other. Upon either of two suppositions, the making of the second deed could be reconciled with the making of the first. One of these is that the first deed, whether it embraced the whole tract or not, was never made effective by delivery; the other is, that each deed was intended to cover one lot only, the first being applicable to number forty-one, and the second to number forty.

2. As to the second deed, whether it be treated as embracing one lot or two, there is certainly a mistake in the number. The number specified is applicable to the "Vincent land," and that lot is in the angle of Middle and Mountain streets, not in the angle of Middle street and Buck alley. This deed, rejecting the mistaken number, would seem on its face to be intended to convey one lot and no more, the lot in the angle last mentioned, that lot being number forty. It would be possible, however, to treat this angle, using the term in a very loose sense, as embracing both lots (to wit numbers 40 and 41), and this construction could be adopted if shown by extrinsic evidence to be the correct one according to the intention of the maker of the deed. The mere fact that both lots were in the same inclosure, and that his residence was within the inclosure, would afford no presumption that he intended to convey both by this deed. But all the relevant facts and circumstances, taken as a whole, might manifest such an intention. Amongst these, a very important element would be the extent of the first deed. If that deed was confined by the ninety feet limit on Middle street to one of the lots, it is almost absolutely certain that the second was intended

to cover the other lot only. If, on the contrary, the first deed embraces both lots, it is fairly probable that the second might be intended to displace the first and embrace both also. It is manifest that if the second deed conveyed only one of the lots, the non-delivery of the first, even if conclusively established, would not be decisive of the whole case, for in that event title to the first remained in the maker of both deeds, and when he died, if he died intestate, and there is no evidence of a testacy, his widow, unless she took dower, inherited from him at least a one fifth undivided interest in that lot, and this would be subject to sale as her property under the levy already made upon the whole tract. The claimant could have no right by virtue of the deed from her father to defeat a sale even of the whole of lot 41, unless this deed covers that lot as well as the other. By instructing the jury that if they found that the deed to Mrs. Trimmier was never delivered their verdict should be in favor of the claimant, the trial court erred, for the non-delivery of that deed would not be decisive of the whole case.

3. The court erred also in delivering any charge whatever on the subject of prescription. Prescription was not in the case, for O. W. Trimmier was in possession until his death in October, 1884, and there is certainly no evidence that he held for his daughter as against his wife, but the weight of the evidence is to the contrary. The levy was made in October, 1889, about five years after the possession of O. W. Trimmier was terminated by death. From that time up to the levy no prescriptive title could have ripened in favor of any one, for the shortest period in which that could take place would be seven years. It is too plain for argument that no prescriptive title available on the trial of a claim interposed as against that levy could be acquired pending the litigation to enforce the levy on one side and to defeat it on the other.          *Judgment reversed.*