## BOURQUIN *v.* BOURQUIN.

1. Where a ground of a motion for a new trial alleging error in admitting evidence fails to state that the objection set forth in the motion was made at the time the evidence was offered, the omission can not be cured by stating in a bill of exceptions, sued out after the time for excepting to rulings at the trial has expired, the fact that the objection in question was made at the proper time.

2. Actual and moral fraud on the part of one holding property in trust for another, whereby the title is apparently transferred to the trustee in his individual name and right, renders void any deed executed in pursuance of such fraud; and the cestui que trust, he being innocent, may, as against the perpetrator of the fraud or one taking with actual notice thereof, attack such deed without resorting to equitable pleadings to set the same aside.

3. It is not proper for the judge to inform a jury that particular evidence is entitled to *great* consideration, but he should leave them free to determine for themselves the weight to be given to it.

4. Where an administrator duly exposed for sale land belonging to the estate of his intestate, caused the same to be " bid in " by a person acting for him, conveyed the land to a named person in trust for a minor son of the administrator, had the deed recorded, charged himself as administrator with the proceeds of the sale, accounted therefor to the heirs of the intestate's estate, and for years returned the land for taxation in the name of the minor son: *Held*, that as a result the title, so far as the father and son were concerned, passed to the latter; and this is true although the administrator's deed was never delivered to the person named therein as trustee, or to the son, but the possession thereof was retained by the administrator.

5. Irrespective of the special questions presented in the motion for a new trial filed by the plaintiff below, the court erred in not setting the verdict aside on the ground that the evidence demanded a finding in the plaintiff's favor as to the tract of land described in the petition, for which there was a finding in favor of the defendant.

6. When a plaintiff sues for two distinct parcels of realty in the same action, and there is a verdict in his favor as to one and in favor of the defendant as to the other, a general grant of a new trial at the instance of either party reopens the entire case for investigation.

Argued February 12,—Decided April 7, 1900.

Complaint for land. Before Judge Falligant. Chatham superior court. December term, 1898.

*G. W. Owens,* for plaintiff.    *W. C. Hartridge,* for defendant.

Cobb, J. This was an action of ejectment brought by Polignac Bourquin to recover of Gugie Bourquin two separate parcels of real estate, one parcel being located in the city of Savannah

and the other outside of the city in the county of Chatham. The jury returned a verdict finding the " city property " for the plaintiff and the " country property " for the defendant. Each party filed a motion for new trial; and upon the overruling of his motion sued out a bill of exceptions to this court, each contending that the jury should have found in his favor as to both of the parcels in dispute.

1. The plaintiff's motion for a new trial was overruled June 17, 1899. In this motion he complains of the admission of certain evidence offered by the defendant, alleging that the evidence was irrelevant, but fails to state in the motion that this ground of objection was urged at the trial. This ground of the motion, as has been often ruled by this court, can not be considered. The plaintiff, however, attempts to cure this omission by assigning error in the bill of exceptions on the admission of the evidence, stating therein that the objection was urged at the trial. The assignment in the bill of exceptions can not be considered, because the bill of exceptions was tendered and certified on June 20, 1899, while the case was tried at the June term, 1897, of the superior court. The bill of exceptions is in ample time to complain of the overruling of the motion for a new trial, but too late to complain of rulings made at the trial, exceptions to which are not embodied in the motion for a new trial. The question arises, therefore, as to whether an omission fatal to the consideration of a ground in a motion for a new trial can be cured by a proper assignment in the bill of exceptions. We think it can not. The trial judge could have refused to grant a new trial on the ground of the motion under consideration, for either one of two reasons: first, that, treating the assignment as properly made, no error was committed in admitting evidence; and second, that conceding error to have been committed, the assignment was improperly made, because the ground of the motion did not state what objection was made to the evidence at the trial. When a motion for a new trial is presented to a trial judge, he can refuse, just as this court refuses, to consider any ground thereof which is improperly framed. If he should overrule a motion for this reason, then it can not be said that he has ever passed on the question attempted

to be made in the motion.    This court sits to review *rulings*
of the trial courts, and it will not pass upon questions on which
no ruling has ever been made by the trial judge.    See, as bear-
ing somewhat on the question under consideration, *Clay* v.
*Smith,* 108 *Ga.* 189; *Newman* v. *Day,* 108 *Ga.* 813.

2. The jury found for the plaintiff the city property.    It
appears from the evidence that the plaintiff is the natural son
of the defendant; that in 1872 the latter bought the property in
dispute from certain named persons and caused a deed thereto
to be made to him as trustee for the plaintiff; that in 1891 the
property was seized by the City of Savannah and sold for taxes,
being bought in by Julius Kaufman.    The plaintiff became of
age in November, 1891.    On July 8, 1892, Kaufman conveyed
the property to the defendant.    If these deeds from the city to
Kaufman and from him to the defendant are valid, then the
defendant as trustee has been divested of the title and he owns
the property in his individual right.    If, on the other hand, the
deeds referred to are invalid for any reason, then the title is
still in the defendant as trustee, and the jury properly found for
the plaintiff, as the trust, if one existed, became executed in No-
vember, 1891.    The plaintiff attacked these deeds as being fraud-
ulent and void.    A deed obtained by actual or moral fraud con-
veys no title, and the true owner when he is an innocent victim
of the fraud may, as against the perpetrator of the fraud or one
who has notice of the same, either go into equity to have the
deed cancelled, or sue in ejectment for the property embraced in
the deed and attack the same as a fraudulent conveyance.    Under
the practice in this State, a plaintiff in ejectment can set up in
his petition that a given conveyance was obtained by fraud,
and pray for its cancellation, but he need not do even this.    If
he shows by his evidence that the deed on which the defendant
relies was obtained by actual or moral fraud and shows title in
himself, judgment ought to be rendered in his favor.    We think
the jury were warranted in finding that the deeds from Kauf-
man to the defendant and the deed from the city marshal to
Kaufman were infected with fraud.    Notwithstanding the prop-
erty was worth about $125 a year for rent, the defendant al-
lowed it to be seized and sold by the city for taxes.    Kaufman,

who was not especially intimate with the defendant, "happened" to be at the court-house on the day of sale. He testified that: the marshal suggested that he bid in the property for the defendant, while the marshal testified that the suggestion came from Kaufman himself, and he admitted that on a former trial of the case his testimony was on this point the same as that of the marshal on this trial. However this may be, he did buy it in, as he said, for the defendant, paying for it the sum of $35. The deed to him was made July 8, 1891. Afterwards he saw the defendant and told him what he had done; whereupon the defendant cursed him and told him to mind his own business. After that Kaufman thought the property was his, and told the defendant so. Matters went along this way for some time, when, on July 8, 1892, just one year and a day after Kaufman bought the property, he executed a deed to the same to the defendant in his individual right, the consideration being $40.60, notwithstanding the property was worth at least $1,000. Thereafter the defendant returned the property for taxes in his own name, and treated it in every way as his own. While the evidence on the question of fraud was not of such character as to demand a finding in favor of the plaintiff, we think the jury were authorized to find that the transactions which culminated in the deed to the defendant were merely colorable and entered into for the express purpose of defeating any right which the plaintiff might have to claim the property. The motive for doing this on the part of the defendant was furnished by the fact that he and the plaintiff had not gotten along well together, and that the latter had left his father's house and been absent for several years. The deed from Kaufman was taken on the very day after the time for redeeming the property had expired, and the amount paid him was just about sufficient to cover the sum he paid for the property and the expenses of making the transfer.

3. The judge was requested to charge the jury, that "the record of a deed by the grantor is entitled to great consideration," and in the absence of evidence to the contrary would justify a presumption of delivery. The judge charged the jury that the record of the deed by the defendant and the fact that he returned the property for taxation as the property of the plaintiff raised

a presumption that the deed had been delivered. This charge embodied so much of the request as was legal and proper. It is not proper for a judge to instruct the jury that particular evidence is entitled to great weight or great consideration. This is a matter entirely for them. One juror might give certain evidence great consideration and another might think it entitled to but little weight. This is a matter peculiarly within their province and they should be left free to determine what weight should be given to particular evidence. See *Ryder* v. *State,* 100 *Ga.* 528; *Merritt* v. *State,* 107 *Ga.* 680, and cases cited. There are cases in which an instruction from the judge that evidence of a certain character is entitled to great weight, or should receive great consideration, would be equivalent to an expression of opinion on the evidence, almost amounting to a direction of a verdict in favor of the party in whose behalf the evidence was introduced.

4. The right of the plaintiff to recover the property located in the country depended on the validity of a deed dated July 15, 1880, which the defendant as administrator of the estate of Benedict Bourquin, his father, had made to W. H. Elliott as trustee for the plaintiff. From a copy of the deed which is contained in the record it appears that the defendant as administrator, in pursuance of an order of the court of ordinary, after due advertisement, exposed the property to sale at a time and place authorized by law, and that the same was knocked down to W. H. Elliott as trustee for the plaintiff, for $1,091.25. The deed was attested by a commercial notary public, and was duly recorded. In 1888, 1889, and 1891 the property was returned for taxation by the defendant in the name of the plaintiff. In 1890 it was returned in the name of the defendant as trustee, and from 1892 to 1895 it was returned in the name of Guillemain Bourquin, another son of the defendant. It appeared that the defendant as administrator had made a return to the court of ordinary, showing the sale of the property at the price above stated, and that he as administrator had made a settlement with the other heirs of the estate, each heir receiving his proportionate part of the amount realized from the sale above referred to. It further appeared that the deed had never been actually de-

livered to Elliott, that he had no knowledge of its existence until after the beginning of the present litigation, and that he had never seen the paper until it was handed to him while a witness on the stand at the first trial had in the case.  It also appeared that no money had ever been paid by Elliott to the defendant, and that he had settled with the other heirs out of his own funds.  It is clearly inferable from the record that it was the purpose of the defendant to acquire for the benefit of the plaintiff the property which he had in his possession as administrator, and, not being allowed to become the purchaser at his own sale, he caused the property to be knocked down in the name of Elliott as trustee for plaintiff, executed the deed in pursuance of this sale, treated the property as having passed out of his possession as administrator, and dealt with it as the property of the plaintiff, using his own money to settle with the other heirs, who alone had the right to complain of the irregular way in which the title of the estate had been divested.  It becomes necessary, therefore, to determine whether under this state of facts the title to the property became vested in the plaintiff so that after his majority he could maintain an action of ejectment in his own name against his father.  In determining this it is necessary to decide whether under the facts stated there has been such a delivery of the deed as the law requires.  There was no manual delivery of the deed either to Elliott, the trustee named therein, or to the plaintiff.  Let it be conceded that the evidence required a finding that there had been no delivery of the deed to Elliott as trustee.  If this be true, can the deed be upheld as a deed to the plaintiff?  The plaintiff is the real party at interest in the deed.  If what amounts to a delivery to him has been accomplished, it would seem that the deed would be valid, notwithstanding the nominal trustee whose name was placed in the deed for the sole purpose of representing him had never accepted the deed.  See in this connection *New South B. & L. Asso.* v. *Gann,* 101 *Ga.* 681 (2).  Delivery of a deed by the grantor and acceptance of the same by the grantee are each absolutely essential to the validity of the deed.  The plaintiff at the date of this deed was an infant.  The defendant had caused the property to be sold at administrator's sale and

knocked down in the name of Elliott as trustee for the plaintiff. If the defendant had purchased the property at this sale in his own name and had then made a deed of gift to his son in his own name, although the son was at that time a minor, the transaction would have been perfectly valid as between the defendant and the son, and the only persons who could have called the matter in question were the heirs at law of Benedict Bourquin, who would have had a right, if they saw proper to do so, to set the sale aside. Viewing the transaction in its entirety, it was nothing more or less than a purchase by the administrator at his own sale and a transfer of the property to his son, this being accomplished by the use of the name of another as trustee for the son as purchaser at the sale. As the heirs at law of Benedict Bourquin have been paid the proceeds of the sale, they have ratified the action of the administrator in making the sale, and therefore they can not complain of the irregular way in which the sale was had. After this sale the defendant caused the deed to be executed in the presence of an officer whose duty it was to see that the deed was executed in accordance with law, and, delivery being one of the essential requirements, the fact that the deed was attested by such an officer and purports on its face to have been delivered raises a presumption of delivery. *Ross* v. *Campbell,* 73 *Ga.* 309. The defendant having caused the deed to be placed on record, a presumption that the deed had been delivered arose. *Wellborn* v. *Weaver,* 17 *Ga.* 267; *Harvill* v. *Lowe,* 47 *Ga.* 217; *Gordon* v. *Trimmier,* 91 *Ga.* 472; *Ross* v. *Campbell,* supra. The fact that the grantor treats the property as the property of the grantee raises a presumption of delivery. *Ross* v. *Campbell,* supra. In the case just cited it was said: "Where all of these circumstances united, in the absence of explanation or rebutting proof, they would show the delivery of the deed, although it was in the possession of the grantor when he died some years after its date." In the present case where the deed is really one to an infant, there would be a presumption that the deed was delivered growing out of the fact that he would take a beneficial interest under the deed. Dr. Warvelle in his work on Real Property (2d ed. § 298), after stating the general rule to be that both delivery and ac-

ceptance are essential to the validity of a deed, uses the following language: " But while *acceptance* is as necessary as delivery to effect a valid devolution of title, the law will raise many presumptions in favor of those who may be incapable of giving intelligent assent. Thus, a grant may be made to an infant of tender years who is without discretion to accept or refuse, and a delivery in law will be presumed from the beneficial nature of the transaction." See also Cecil *v.* Beaver, 28 Iowa, 241; Newton *v.* Seeley, 41 Iowa, 334; Lessee of Mitchell *v.* Ryan, 3 Ohio St. 377; Spencer *v.* Carr, 45 N. Y. 406; Colee *v.* Colee, 23 N. E. Rep. (Ind.) 687; 1 Dembitz, Land Tit. § 51. It is clear from the foregoing that the evidence was sufficient to authorize a finding in favor of the plaintiff, but, as the jury found for the defendant, it is necessary to determine whether there was any evidence which would authorize them to disregard the prima facie case made out by the plaintiff's evidence. It was, as has been stated, clearly shown that there was no delivery of the deed to Elliott, but that, as we have seen, was not absolutely essential. There was no such explanation made by the defendant of his conduct in causing the property to be bid in in the name of one as trustee for his son, in treating the sale as a valid administrator's sale and paying over to the other heirs their interest in the proceeds, in having the deed recorded, and in returning the property for taxation for several years in the name of the plaintiff, as would authorize the jury to find a verdict which in effect overcame the presumption arising in the plaintiff's favor from the transactions above referred to. The evidence authorized but one finding, and that is, that the defendant intended to divest the title of the estate that he represented and transfer the same in such a way that it would inure to the benefit of his son; that he did everything in his power to accomplish this purpose; and that after it was complete, on account of some grievance, either real or supposed, against his son, he endeavored to deprive him of rights which had so thoroughly vested that nothing he could do could deprive him of them. While it probably would not be proper to hold that in a case like the present the grantor would be estopped from showing that the deed had not been in fact delivered, we have no hesitancy in holding

that the evidence in the present case demanded a finding that the deed had been delivered. For this reason there was no error in refusing a request to charge, in effect, that the defendant was estopped from setting up that the deed was not delivered.

5, 6. Irrespective of the special questions raised by the motion for a new trial filed by the plaintiff below, the court erred in not granting a new trial in the case on the ground that the evidence demanded a finding in favor of the plaintiff for the recovery of the property located in the country. The judgment of the court below will therefore be reversed for refusing to grant a new trial in the case. The effect of this will be to reopen the entire case for investigation at another trial, notwithstanding the judgment of the court below in refusing to grant a new trial at the instance of the defendant is affirmed. Each party moved for a new trial in the case, not for a new trial of any particular part of the case, even if this could be done. No sufficient reason has been shown why a new trial should have been granted at the instance of the defendant, but it is clear that the judge erred in not granting a new trial at the instance of the plaintiff, and the effect of the reversal for refusing to grant a new trial at his instance will be to set aside the verdict in its entirety and leave the case as if it had never been tried. If that part of the verdict which was in favor of the plaintiff had been demanded by the evidence, we would probably have given direction that so much of the finding should be allowed to stand, but as the evidence on that branch of the case would have authorized a verdict either way, we have deemed it best to let a new trial be had as to both parcels of property. Whether in a case like the present a motion for a new trial could be properly made to set aside a part of a verdict only, or whether upon a motion to set aside the entire verdict the trial judge could order a new trial as to only one of the causes of action set forth in the declaration, are questions not necessary to be determined and will not now be decided.

The judgment on the bill of exceptions sued out by the plaintiff will be reversed, with direction that the verdict and judgment below be set aside and the case be retried generally as to both parcels of realty described in the plaintiff's petition; and

on the bill of exceptions sued out by the defendant below the judgment will be affirmed, but, on account of the judgment just referred to on the other writ of error, direction is given that the judgment of affirmance shall not have the effect of preventing a full investigation and determination of the entire case.

*Judgment in one case reversed with direction; in the other affirmed with direction. All the Justices concurring.*