## HENDERSON *et al.* v. KEMP.

1. A deed to land, reciting that the grantor " does hereby sell and convey unto [the wife of the grantor] her lifetime, and then at her death to her son [naming him], a certain lot of land [describing it], together with all the rights and privileges thereunto belonging, in fee simple; and the said [grantor], his heirs, executors, and administrators, the title to the premises aforesaid will forever warrant and defend to the said [grantees], their heirs and assigns, against the lawful claims of other persons," the deed being properly executed, conveyed, if delivered, an estate for life to the wife, with remainder to the son.

2. The fact that the grantor had this deed recorded created a presumption that it was delivered, and that presumption was not overcome by any evidence submitted.

3. If the deed was executed and delivered, though executed for the purpose of defeating, hindering, or delaying creditors of the grantor, it

was effectual to convey title to the grantees as between them and the grantor. *McDowell* v. *McMurria,* 107 *Ga.* 812 (33 S. E. 709, 73 Am. St. R. 155); *Moore* v. *Cline,* 115 *Ga.* 405 (41 S. E. 614), and cases, there cited.

4. The evidence which was offered to sustain the contention of the defendants that there had been no delivery of the deed in question, and which was excluded by the court, even if admissible, was not of sufficient materiality to rebut the presumption arising from the other facts tending to show delivery.

<div align="center">No. 3387. April 14, 1923.</div>

Equitable petition. Before Judge Eve. Turner superior court. July 7, 1922.

*A. S. Bussey, Perry & Tipton,* and *W. T. Williams,* for plaintiffs in error. *Hal Lawson,* contra.

Beck, P. J. Mrs. Daisy Kemp brought an equitable petition against J. W. Henderson, who was the son of J. J. Henderson, the latter being the grantor in a certain deed through which the plaintiff claims to have derived title to the property in dispute. The other defendants besides J. W. Henderson were coheirs with him, being the children and grandchildren of J. J. Henderson. The petition contained a prayer for injunction to restrain the defendants from interfering with her possession of the property. By an amendment, which was allowed, the case became and was an action to recover the land described, with mesne profits. After the evidence had been introduced, the amount of the mesne profits having been agreed upon, the court directed a verdict in favor of plaintiff for the land sued, for, and for mesne profits in the amount agreed upon. The defendants filed their motion for new trial, which was overruled, and they excepted.

1. Whether the court erred in directing a verdict in favor of the plaintiff for the property in controversy depends, mainly, upon two questions: First, whether the deed from J. J. Henderson to his wife, Mrs. Susanna Henderson, and his son, conveyed a life-estate to the wife with remainder to his son; and second, whether the evidence required a finding that the deed had been delivered. The deed in question reads as follows: " This indenture made this the first day of May, 1890, between J. J. Henderson of the county aforesaid, witnesseth that the said J. J. Henderson, for and in consideration of the sum of one thousand dollars, the receipt whereof is hereby acknowledged, does hereby sell and convey unto the said Susanna Henderson her lifetime; and then at her

death to G. W. Henderson, her son, a certain lot of land situated in the county aforesaid, to wit, lot of land No. 95, containing 453 acres, more or less, lying and being in the 2nd district of said county, together with all of the rights and privileges thereunto belonging, in fee simple; and the said J. J. Henderson, his heirs, executors, and administrators, the title to the premises aforesaid will forever warrant and defend to the said Susanna Henderson and G. W. Henderson, their heirs and assigns, against the lawful claims of all other persons."

This deed is inartificially drawn. It was drawn by the grantor himself, who was not a lawyer. But we are of the opinion that the plain intention of the grantor was to convey an estate for life to his wife and the remainder to the son named in the deed, G. W. Henderson. The defendants insisted that if the deed was delivered so as to become effectual, the interest that passed to the grantees was not that of a life-estate to Mrs. Susanna Henderson with remainder over to George W. Henderson, but was, under a proper construction of the deed, a life-estate to Mrs. Susanna Henderson and then a life-estate to George Henderson, and that upon the death of both of them the property descended to the heirs of both Mrs. Susanna Henderson and George Henderson as a class. We do not agree with this contention; but, as ruled above, Mrs. Susanna Henderson took a life-estate and George Henderson took a vested remainder. The plaintiff in this case was the widow of George Henderson, and at his death, being his only heir at law, she was vested with a fee-simple title.

There now remains the question as to whether or not the deed was delivered, so as to become effectual; there being the subsidiary question as to whether the evidence required a finding that it was delivered, so as to authorize the court to direct a verdict in favor of the plaintiff. And as to both of these questions an affirmative answer seems required by the evidence. In the first place, the grantor had caused the deed to be put upon the record. This raised the presumption of a delivery, and it is not overcome by any of the evidence introduced. In fact it is rather strengthened. The deed was found, after the death of the grantor, in a satchel in a wooden chest. In the satchel were found other deeds conveying the land in controversy, which were a part of the chain of title. In the chest Mrs. Susanna Henderson kept "her things

·—her individual things." Besides this there were some other papers (the evidence not being very clear as to their character) which were also kept there, some of them belonging to J. J. Henderson. It is shown that J. J. Henderson remained in possession of the property, lived upon it with his wife and managed it; but he returned. it for taxation as the property of his wife. And there were numerous deeds executed subsequently to the date of this one in controversy, conveying portions of the land embraced in the deed in question. These deeds were executed by Mrs. Susanna Henderson, and several of them were attested by J. J. Henderson. Considering these facts, to say nothing of other facts that tend to strengthen the conclusion we have reached, a finding that the deed had not been delivered could not stand. The record of a deed, where it was properly executed, is prima facie evidence of its delivery; and in the absence of rebutting evidence it is sufficient to prove the delivery of the deed. *Mays* v. *Fletcher,* 137 *Ga.* 27 (72 S. E. 408). In the case of *Allen* v. *Hughes,* 106 *Ga.* 775 (32 S. E. 927), it was said: " The record of a deed is itself presumptive proof of its delivery. *Wellborn* v. *Weaver,* 17 *Ga.* 275; *Harvil* v. *Lowe,* 47 *Ga.* 217. See also 3 Wall. 636; Tiedeman on Real Prop., § 812; *Highfield* v. *Phelps,* 53 *Ga.* 59; *Watson* v. *Myers,* 73 *Ga.* 138; *Ross* v. *Campbell,* 73 *Ga.* 309. We find nothing in the evidence which would authorize a jury to find that the deed was not delivered. It is true it was found among the papers belonging to the grantor and his wife, the life-tenant. No presumption inconsistent with delivery will be raised from this fact. The trustee had long since died. The wife, being the life-tenant, was the proper custodian of this instrument. It was natural that the papers belonging to the husband and the wife should be kept together; at least, when so done, no discredit can be thrown upon a paper in which she had an interest, and no presumption of non-delivery will follow." Other courts have gone this far in ruling as to the effect of proof of circumstances like these, and indeed have gone farther. " A deed signed, acknowledged, and recorded is a complete and valid deed, although there is no evidence of any formal delivery and the instrument is found among the grantor's papers at his death." Scrugham *v.* Wood, 30 Am. D. 75 (15 Wend. (N. Y.) 545); La Fleure *v.* Seivert, 98 Ill. 234; Riegel *v.* Riegel,

243 Ill. 626 (90 N. E. 1108); Hoyt v. Northup, 256 Ill. 604 (100 N. E. 164). See also the case of Ross v. Campbell, 73 Ga. 309.

2-3. The rulings stated in headnotes 2 and 3 require no elaboration.

4. In the fourth ground of the motion for new trial error is assigned upon the judgment of the court excluding the testimony of J. W. Henderson, one of the defendants, which evidence was as follows: " Q. About the time of that deed, the date of it, as it purports to be dated May 1st, 1890, about that time did you have a talk with your father about preparing some deeds, or did he make any statements to you about that ? Explain briefly what your father stated to you? " " A. In 1890 or '91 briefly along in there he was in the Alliance business in a store at Sycamore, and they all went broke. I don't know just how it occurred; and he brought two papers to me and handed me one of them; it was a deed to lot 94, what land he had not sold, and he told me that he was going to Isabella and put it on record, and that would prevent them from selling the property, and he said he had made my mother a deed to the land, and said he was going to hold it in her name to keep them from bothering the old home; that paper here looks like the same deed he showed me." " Q. Had two deeds, one to 94 and one to 95? " " A. Yes, sir." " Q. And one was made to you? " " A. Yes, sir." " Q. He stated that one deed was made to you, the one he gave you, to hold the property? " " A. Yes, sir, and said whenever he wanted a little money he would sell off a little and I would make the deed to it." " Q. Did you say the deed was to 95? " " A. He said it was to 95." " Q. Explain to the court what led up to this, and what information you have as to the time; was that phase ever mentioned in making these deeds? " " A. Yes, sir." " Q. Did you know about the recording of the deeds? " " A. Yes, sir. He told me to record this one and to hold it, and he would go to Isabella and record the other one." " Q. You have the one you had recorded? " " A. Yes, sir." And in the 5th ground of the motion error is assigned upon the exclusion of the following testimony of the same witness for the defendants: " Q. What mention did you hear made by your father or mother or brother George Henderson or Mrs. Kemp, at that time, with ref-

erence to this deed along during those years?" "A: I never heard nobody mention no deed at all." Clearly the testimony of the witness as to the fact that he had heard nobody mention the deed was not of sufficient materiality to affect the result in this case. As to the testimony of the witness in regard to the conversation with his father, there are two reasons why a new trial can not be granted on the ground that the court erred in ruling out this testimony. A part of the testimony tended to show that the father had executed the deed for the purpose of hindering and delaying creditors, and evidence to establish that fact was incompetent, because it was immaterial, as the deed would have been effective between the parties to this case though it had been executed for the purpose indicated. Besides, it was of but very slight materiality if offered to show that the deed had never been delivered; for if in fact the grantor, J. J. Henderson, had executed such a deed for the purpose of preventing his creditors from subjecting his property to their claims against him, and if he had executed it for this sole purpose, and had had it duly recorded, there were no grounds for inference that he would not observe the other formality of delivering it for the purpose of effectuating his intention. There would be just as much presumption of delivery arising from the fact of record in the one case as in the other.

<div align="center">

*Judgment affirmed. All the Justices concur.*