STINSON *v.* DANIEL *et al.*

No. 14071.   April 15, 1942.   Rehearing denied May 20, 1942.

*W. H. White, R. I. Stephens, E. L. Stephens, C. C. Crockett,* and *W. W. Larsen Jr.,* for plaintiff in error.

*Blackshear & Blackshear* and *Lester F. Watson,* contra.

GRICE, Justice. ■ The ground of attack based on undue influence exerted over the grantor was unsupported by the evidence.

■ If the jury were authorized to find in favor of the complainants, it was because of the other ground of attack, to wit, the failure of delivery. The only person named as the grantee in the deed was Mrs. Stinson, who will be referred to herein as the grantee; and the proof is undisputed that the instrument never reached her until after the death of her father, the grantor. There is no conflict in the evidence bearing on the issue of delivery, except that one witness referred to the safe in which the deed was placed as that of the grantor, and another as his wife's safe. Both witnesses were introduced by the defendant; the grantee testifying that it was Mrs. Fuqua's safe, and not her father's; that her father could not unlock it; that "she [Mrs. Fuqua] kept other papers in that safe, hers and papa's too." The other witness was Mrs. Fuqua (since deceased), who testified: "I didn't tell Mrs. Stinson [the grantee] about the deed, because I didn't think I had the right to tell her about it. I didn't hide that deed. It was in the safe at home.

He said he didn't care who knew about it. He carried it home and put it in his safe. . . I didn't tell Mrs. Stinson about the deed, and I don't know who did. Mrs. Stinson found it out the next day after he was buried, and she came down, and then I went and got it right where Mr. Fuqua put it." A third witness, L. E. Clark, testified on behalf of the plaintiff, that he was farming on the place with Mrs. Fuqua after the grantor's death: "I knew that the iron safe was there, and saw it. I do not know whose it was. I don't know whether Mr. Fuqua could open it or not. I opened it for Mrs. Fuqua while I was there. She couldn't open it, and gave me the combination." This was after the grantor's death.

The grantor, sometime before the execution of the instrument, had one or more interviews with the attorney who had been accustomed to drafting his legal papers, on the subject of disposing of this property. His idea at first was that he probably wished to have a will drawn, but after a further conference he adopted the attorney's suggestion to execute a deed instead. The scrivener testified that the grantor stated to him: "I want to leave my real estate that I have to Alice," (speaking of Mrs. Stinson), and repeated the same thing again, saying that he had provided for his deceased daughter in a way that more than compensated them. "I said, 'All right, Mr. Fuqua, have you got a description of the land?' and he reached in his pocket and got out the deeds." The grantor, his wife, and Mrs. J. R. Daniel went to the attorney's office, and there the deed was executed. Before leaving the attorney's office the grantor placed it in his pocket, the attorney having advised him to have it recorded; but he said he would do that later, that he then wanted to return to his home. This was on April 13, 1933. Returning to his home he put it in the safe. This safe contained private papers belonging to him, and private papers belonging to his wife. His wife knew the combination of the safe. There was testimony that the grantor himself could not unlock it. Later J. R. Daniel, while passing by the home of the grantor, was invited by him to come in, and was told by him that he desired Daniel to take the deed to the clerk's office at the court-house and have it recorded, and directed his wife to get it out of the safe, which she did, the grantor telling Daniel to leave it to be recorded, giving him the money to pay for recording it, and saying that he himself would get it later. The evidence is silent as to the return

of the deed after its record, but it was by some one replaced in the safe where it was formerly placed. The grantor's daughter, Mrs. Stinson, to whom the deed was made, did not know of its execution until the day after her father's burial, when she came to the home, and it was handed to her by her stepmother, she getting it out of the safe, although Mrs. Stinson testified that her father had previously spoken to her on the subject and said he was going to give her the property.

It does not definitely appear from the evidence whether the property described in the deed embraced the home of the grantor or not, or who was in possession at the time of the execution of the deed. But, so far as appears from the record, the grantor resided with his wife on this property at the time of his death.

The above is a complete summary of all the evidence before the jury on the question of delivery.

"The delivery of a deed is essential to the transfer of title. It is the final act without which all other formalities are ineffectual." 1 Delvin on Real Estate (3d ed.), § 260. The Code, § 29-101, declares that "A deed to lands must be in writing, signed by the maker, attested by at least two witnesses, and delivered to the purchaser, or someone for him, and be made on a valuable or good consideration." The formal execution of the deed and the language of the attestation clause raised a prima facie presumption that the deed was delivered. *Bourquin* v. *Bourquin*, 110 *Ga.* 440, 446 (35 S. E. 710); *Mays* v. *Fletcher*, 137 *Ga.* 27-28 (72 S. E. 408). The deed was duly recorded. This also raised a prima facie presumption of delivery. *Henderson* v. *Kemp*, 155 *Ga.* 489, 492 (117 S. E. 244). Even if placed on record by the direction of the grantor, this amounts to no more than prima facie evidence of delivery. *Wellborn* v. *Weaver*, 17 *Ga.* 267 (63 Am. D. 235); *Daniel* v. *Stinson*, supra. "If, notwithstanding the recording, it be shown affirmatively that there was really no delivery, and that the intention to deliver was abandoned, the deed would be inoperative." *Gordon* v. *Trimmier*, 91 *Ga.* 472 (18 S. E. 404). In *Rushin* v. *Shields*, 11 *Ga.* 636 (5) (56 Am. D. 436), it was said: "If a deed be signed and sealed, and declared by the grantor in the presence of the attesting witnesses, to be delivered as his deed, it is an effectual delivery, provided there be nothing to qualify the delivery, notwithstanding the grantee was not present, nor any

person in his behalf, and the deed remained under the control of the grantor." The case did not involve the question whether, if a deed was signed, sealed, and declared by the grantor in the presence of attesting witnesses to be delivered as his deed, this was an effectual delivery; and therefore the statement quoted in the headnote in the *Rushin* case, supra, is not an authority. Nor was this question involved in *Holly* v. *Whitehurst,* 164 *Ga.* 265, 270 (138 S. E. 231), where the quoted words from the *Rushin* case were used in the opinion. The proposition asserted in these two cases is not believed to be sound, and apparently overlooks the code section which is elsewhere quoted in this opinion, to the effect that one of the requisites of a deed is that it must be delivered to the purchaser. And the statement is also out of harmony with other rulings herein cited, to the effect that such a statement in the attestation clause is merely prima facie evidence of delivery. Since neither of the matters mentioned raised a conclusive presumption of a delivery, the question is whether there was proof sufficient to authorize a finding by the jury that this presumption had been rebutted. "Whether the facts constitute a delivery of the deed is a question of law; whether such facts exist is a question for the jury." *Willingham* v. *Smith,* 151 *Ga.* 102 (106 S. E. 117). This last statement means more than that the jury is merely to pass upon the credibility of witnesses where the evidence is conflicting, but imports that in certain cases where the existence or non-existence of the fact is to be determined in whole or in part from circumstances, and where reasonable men might draw opposite conclusions from the same undisputed testimony, it is the jury's problem to find what is the truth to be drawn therefrom. It is entirely conceivable that one jury might find one verdict and another jury an entirely different verdict on the same evidence, and yet it could not be ruled as a matter of law that either finding is contrary to the evidence. Although the field in which this could be done is a limited one, its existence is nevertheless established by the decisions of this court and of many others. There may be found in 7 Thompson on Real Property, § 4113, the following: "The question of the completed and effectual delivery of a deed is one of intent of the grantor, and this intent to irretrievably part with control of the deed is to be gathered from the circumstance under which the delivery was made." Also (§ 4117): "Where there

are only facts from which a delivery may be doubtfully inferred, then the finding should be left to the jury under proper instructions, upon the whole evidence in the case," which statement, as shown by an examination of the many authorities on which it is based, finds almost universal support. As to the right of the jury to find from circumstances that the presumptive evidence of delivery which arises from the record of the deed has been rebutted by proof, compare *Whiddon* v. *Hall,* 155 *Ga.* 570 (6) (118 S. E. 347); *Richards* v. *Smith,* 170 *Ga.* 398 (153 S. E. 44). The jury had a right to attach significance to the fact that although Mrs. Fuqua was present when the deed was executed, the maker did not hand it to her, but instead put it in his pocket; that reaching home he did not deliver it to her, but put it in the safe, with never a word to her at the time; and that, although sworn as a witness, she was silent as to anything he ever said to her on any other occasion concerning the deed, except when he asked her to get it from the safe in order that he might send it to the clerk's office for record. The jury might have thought that his entire conduct was more in harmony with his purpose not to make delivery of the instrument than it was with his intent to part with dominion over it. Unless it had passed from his control there was no delivery, although there might have been in his mind a determination to deliver it at some future day. So long as there remained an opportunity for him to change his mind, and this period continued until it was delivered, the title did not pass by virtue of the execution of the deed even though it had been recorded at his own instance. "The true test of delivery of a deed of conveyance is whether or not the grantor intended to reserve to himself the locus penitentiæ." 7 Thompson on Real Estate, § 4113. The delivery, to be effectual, must be made in the lifetime of the grantor. See *Hadaway* v. *Hadaway,* 192 *Ga.* 265 (2), 270 (14 S. E. 2d, 874); *Hall* v. *Metropolitan Life Insurance Co.,* 192 *Ga.* 805, 807, and cit., together with an analysis there made of several of the previous decisions of this court relating to this subject.

Mrs. Fuqua after the death of her husband delivered the deed to the grantee therein named, Mrs. Stinson. While it is true that a delivery to be effectual must be made during the lifetime of the grantor, it is not here ruled that said delivery would be ineffectual if the paper did not actually reach the grantee until after the

grantor's death, provided the latter in his lifetime had actually delivered it to a third person for the purpose of having it handed to the actual grantee, though this latter act was not consummated until after the grantor's death. The evidence, however, is silent as to any directions given by him to Mrs. Fuqua as to the ultimate delivery of the deed. Since delivery to the grantee or to some one for the grantee was essential to the completion of the conveyance, the deed was not effective as a muniment of title until some proof had been made of its delivery in the lifetime of the grantor, either actual or a constructive delivery. Mrs. Stinson's testimony expressly negatives the idea that it was actually delivered to her in her father's lifetime. The record does not disclose any instruction on his part to his wife to deliver it to his daughter, the grantee. The facts and circumstances, while strongly suggestive of the purpose of the owner of this property to pass title thereto to the grantee named in the deed, do not furnish conclusive evidence that this deed had been delivered.

Mrs. Fuqua was mentioned in the deed, and it is contended that delivery may be inferred from the fact that after the death of the grantor, she, having obtained possession of the instrument, handed it to Mrs. Stinson. It is insisted that under the principle ruled in *Deaver* v. *Aaron*, 159 *Ga.* 597 (126 S. E. 382), Mrs. Fuqua took no interest under the deed, and therefore that no inquiry need be made as to whether it was ever delivered to her. However, we find it unnecessary to decide whether she, though not named as a grantee, did in fact take an interest thereunder; for if it be conceded that she was in fact a grantee of an estate for life thereunder, the verdict nevertheless should stand. The jury were authorized, in view of the entire testimony, to draw the conclusion, notwithstanding the placing by the grantor of the deed in the safe where both his and his wife's other papers were kept, and it being in her possession after his death, when she handed it to Mrs. Stinson, who then for the first time knew that there was such a deed, that the prima facie presumption as to its delivery was rebutted. It not being shown that the grantor was in possession of the land described in the deed at the time of its execution and that he remained thereafter in possession thereof, the question is not presented for decision whether, under these circumstances, the retention of the deed by him, he having reserved a life-estate,

would itself be a delivery. See *Chattahoochee Fertilizer Co.* v. *Quinn,* 169 *Ga.* 801, 803 (151 S. E. 496).

This court has on two occasions recently passed upon the necessity of the approval by the judge of the verdict when the dissatisfied party moves for a new trial. In those cases the authorities were cited, and no further attempt will here be made to state the law on the subject. We merely refer to those two cases. One is *Mills* v. *State,* 188 *Ga.* 616 (4 S. E. 2d, 453). The other is *Wilder* v. *State,* 193 *Ga.* 337 (18 S. E. 2d, 546). The language of the judge in the instant case in relation to the preponderance of the testimony on the question of delivery we take to be an expression on his part as to where the weight of the evidence lay. His subsequent language in the order, "in the exercise of my discretion," must be held to mean that he complied with his duty with respect to passing upon the motion.

*Judgment affirmed. All the Justices concur.*