S10A1007, S10X1009. SMITH et al. v. LOCKRIDGE et al.; and vice versa.

(702 SE2d 858)

NAHMIAS, Justice.

This case involves the validity of a 2005 deed, as well as 11 earlier deeds that the grantor executed between 1975 and 1980 but retained in his possession and recorded approximately 20 years later after altering the deeds to substitute new grantees for the original grantees. The case has a convoluted procedural history, but ultimately the trial court granted summary judgment upholding both the 2005 deed and the 1975-1980 deeds, and the plaintiffs have appealed that ruling. The two issues that control this appeal are: (1) whether the trial court properly rejected the plaintiffs' claim that the 1975-1980 deeds were delivered to them as a matter of law because the grantor was at some point their fiduciary for certain purposes; and (2) whether a prior Court of Appeals' decision affirming the validity of the 2005 deed on summary judgment was res judicata as to further attempts to dispute the 2005 deed. The answer to both queries is yes. The plaintiffs raise additional claims on appeal, but

they are insubstantial. Accordingly, we affirm.

1. The relevant facts, viewed in the light most favorable to the plaintiffs as the parties opposing summary judgment, are as follows. D.B. Smith ("the grantor") had extensive land holdings, a large portion of which he leased to a timber company in 1958. Between 1975 and 1980, the grantor executed 11 deeds of the timber land that named his daughter Virginia Smith or his granddaughter Terri Sanders as grantees. The grantor kept a log showing the date each deed was executed, the grantee named, and the land included, but he did not record the deeds at that time. Virginia Smith executed a power of attorney in favor of the grantor in 1976, and the grantor was Terri Sanders's legal guardian from 1981 to 1988. The grantor handed the deeds to his granddaughter when she was a teenager and told her that the property was hers, but he kept the deeds in his possession and control. The grantor also described the land to his son-in-law as property that he had given to his daughter and granddaughter.

By the time the grantor recorded the deeds in 1997 and 1998, he had changed the names of the grantees on the deeds executed from 1975-1980. Six of the deeds now listed his grandsons, Danny and David Lockridge, as the grantees. The other five deeds listed Danny Lockridge as the sole grantee. The grantor later explained in a recorded affidavit why he altered the deeds. He said that he "changed [his] mind" about giving the land to Virginia Smith and Terri Sanders because they had not honored him and had refused to sign a document giving the grantor and his wife a life estate in the proceeds from the timber lease on the property. The affidavit stated that "only undelivered deeds . . . were changed while they were still within my power and discretion to change my mind to give them to whomever I willed" and emphasized that the grantor had not altered other deeds conveying land to his other daughter and her family.

In January of 2005, the grantor separated from his wife of over 60 years, Dorothy Smith. The grantor moved in with his oldest grandson, Danny Lockridge. On February 23, 2005, the grantor executed a quitclaim deed, which was recorded two weeks later, that conveyed any interest the grantor might have in over 3,000 acres of land to Danny Lockridge and his wife and daughter. The grantor died in 2006, at the age of 89.

2. As noted above, this case has a convoluted procedural history that is germane to the resolution of this appeal. A complaint challenging the validity of the 1975-1980 deeds and the 2005 quitclaim deed was filed on February 27, 2007. The plaintiffs eventually included the grantor's wife, his daughter Virginia Smith and his other daughter, his granddaughter Terri Sanders, and the owners of two neighboring properties that were included in the 2005

quitclaim deed (collectively, "the plaintiffs").[1] Named as defendants were the grantor's two grandsons, Danny and David Lockridge, and Danny Lockridge's wife and daughter (collectively, "the grandsons").

The complaint, as later amended, raised two claims about the validity of the 1975-1980 deeds. First, the plaintiffs alleged that the deeds were void because the grantor never delivered them to the original grantees and altered and recorded them without re-attestation. Second, the plaintiffs alleged that delivery to the original grantees had taken place because the grantor was at some point a fiduciary for Virginia Smith and Terri Sanders. The complaint also challenged the validity of the 2005 quitclaim deed but did not name a specific legal theory. Instead, the complaint sought a declaration that the deed was null and void based on various allegations about the grantor's mental state, Danny Lockridge's conduct around the time of execution, and the deed's effect on properties included in the deed that the grantor did not own or had never owned.

The grandsons filed two separate motions for partial summary judgment, one on the plaintiffs' challenge to the 11 deeds executed from 1975-1980 and one on the challenge to the 2005 quitclaim deed. The trial court entered an order addressing both motions on July 30, 2008. The court denied summary judgment on the plaintiffs' challenge to the 1975-1980 deeds but granted partial summary judgment and upheld the validity of the 2005 quitclaim deed. The grandsons obtained a certificate of immediate review of the denial of summary judgment on the 1975-1980 deeds, and the Court of Appeals granted the application for interlocutory review. The plaintiffs also filed a notice of appeal from the grant of summary judgment on the 2005 quitclaim deed. Before filing their notice of appeal, however, the plaintiffs amended the complaint to add three new counts clarifying the legal basis for their challenge to the 2005 deed.

The Court of Appeals affirmed the grant of summary judgment to the grandsons on the plaintiffs' challenge to the 2005 quitclaim deed. *Lockridge v. Smith*, 298 Ga. App. 428, 429-430 (680 SE2d 501) (2009). With respect to the 1975-1980 deeds, however, the Court of Appeals concluded that the complaint alleged two alternative claims, only one of which the trial court addressed. See id. at 430. The trial court had addressed the plaintiffs' claim that the deeds were void because they were not properly re-attested when the grantor changed the names of the grantees and recorded the deeds. See id. The Court of Appeals concluded that this was an equitable claim for

---

[1] The grantor's wife died during the pendency of this appeal, and her estate has been substituted for her as a party.

cancellation of a deed, which is subject to a seven-year statute of limitation, and that the trial court erred in denying summary judgment to the grandsons based on the statute of limitation. See id. at 431. The alternative claim not considered by the trial court was the plaintiffs' allegation that the 1975-1980 deeds, though never physically delivered to them, were delivered to them as a matter of law due to the grantor's fiduciary relationship with them. See id. at 431-432. The Court of Appeals noted that this claim is an action at law not subject to the seven-year statute of limitation. See id. at 432. The Court of Appeals determined that this alternative claim remained pending in the trial court. See id. Neither side petitioned for certiorari.

The parties then returned to the trial court, and the grandsons moved once again for summary judgment. The court conducted a hearing and then granted summary judgment in favor of the grandsons on all remaining claims on January 4, 2010. The plaintiffs filed a notice of appeal. The grandsons filed a cross-appeal, arguing that if this Court found in favor of the plaintiffs on their enumerations of error related to the 2005 deed, we should nevertheless affirm the trial court's grant of summary judgment on the 2005 deed under the right-for-any-reason doctrine based on res judicata.

3. *The 1975-1980 Deeds*. The Court of Appeals' decision left alive only one claim with respect to the 11 deeds executed between 1975 and 1980, namely, that title passed to Virginia Smith and Terri Sanders long before the grantor altered the deeds. See 298 Ga. App. at 431-432. The grantor became a fiduciary for his daughter starting in 1976 when she executed a power of attorney in his favor, and he became a fiduciary for his granddaughter when he was appointed as her guardian in 1981, after all the deeds to her were executed. According to the plaintiffs, that means that the deeds were delivered to them as a matter of law, even though the grantor never physically delivered the deeds to them, he kept them in his own custody and control until he recorded them in 1997 and 1998 after changing the grantees, and he later recorded an affidavit stating that the deeds had not been delivered to the original grantees. We agree with the trial court that this legal theory is unsound, and that the grandsons were entitled to summary judgment upholding the validity of the deeds as altered.

Execution of a deed without delivery is insufficient to pass title. See *Robinson v. Williams*, 280 Ga. 877, 879 (635 SE2d 120) (2006). " 'It is indispensable to the delivery of a deed that it pass beyond the control or dominion of the grantor; and where a grantor retains a deed which he executes in his possession and control until his death without doing anything to indicate an intention to deliver it, it is void for want of a delivery.' " Id. (quoting *Childs v. Mitchell*, 204 Ga. 542,

544 (50 SE2d 216) (1948)). Even where the grantor stands in a relationship of trust with the grantee, the grantor's intent to deprive himself of power and control over the deed must be shown. See *Stinson v. Woodland Bank*, 154 Ga. 254, 257 (114 SE 181) (1922). The true test of delivery is "'whether or not the grantor intended to reserve to himself the locus penitentiae,'" which means "'an opportunity for changing one's mind,'" "'an opportunity to undo what one has done,'" or "'a right to withdraw from an incomplete[ ] transaction.'" *Morris v. Johnson*, 219 Ga. 81, 89 (132 SE2d 45) (1963) (citations omitted).

Thus, our cases hold that where a parent executes a deed in favor of a minor child and shows the deed to the child, there is no delivery if the parent does not record the deed, retains the deed in his possession and control, and retains possession of the land included in the deed. See *Morris*, 219 Ga. at 90-91; *Stinson*, 154 Ga. at 256-257. Similarly, simply handing a deed to a potential grantee for review and then taking it back does not constitute delivery. See *Keesee v. Collum*, 208 Ga. 382, 386 (67 SE2d 120) (1951). A grantor's mere statements that the property already belongs to the potential grantees who are named in an undelivered, unrecorded deed is insufficient to show delivery if the grantor keeps the deeds in his possession and takes no action to have them delivered. See *Giuffrida v. Knight*, 210 Ga. 128, 130-131 (78 SE2d 29) (1953).

The plaintiffs argue that as his daughter's attorney-in-fact and as his granddaughter's guardian, the grantor had a legal duty to act in their best interests. That may be true, but he had no legal duty to give them his own property, and the plaintiffs cite no authority for such a proposition. Delivery does not occur when a parent executes a deed naming his minor child as the grantee but retains in his possession both the unrecorded deed and the property. That being the case, we are unwilling to find delivery under the same circumstances where the grantor is not a parent, but merely a guardian or attorney-in-fact. Nor did the grantor's showing the deeds to his granddaughter or making statements to her or his son-in-law about the properties effectuate a delivery. Summary judgment as to these deeds was therefore properly entered.

4. *The 2005 Deed.* After the trial court's initial grant of summary judgment in favor of the grandsons on the 2005 quitclaim deed, the plaintiffs amended the complaint to add counts for cloud on title, undue influence, and mistake of fact. The grandsons argued that all three counts were barred by the Court of Appeals' decision affirming the initial grant of summary judgment on the 2005 deed, after which the plaintiffs failed to seek review by this Court by way of a petition for certiorari. The trial court agreed with the grandsons that res judicata barred the cloud on title count but disagreed that res

judicata applied to the counts for undue influence and mistake of fact. The trial court nevertheless granted summary judgment on those two counts after finding that there was no genuine issue of material fact with regard to undue influence and mistake of fact.

On appeal, the plaintiffs argue that the trial court erred in applying res judicata to bar their cloud on title claim. The grandsons disagree and argue in their cross-appeal that the trial court's error was in not applying res judicata to bar the undue influence and mistake of fact counts as well. We agree with the trial court that res judicata bars the cloud on title count and with the grandsons that res judicata also bars the other two counts.

There are three prerequisites to the application of res judicata: (1) identity of the cause of action; (2) identity of the parties or their privies; and (3) a previous adjudication on the merits by a court of competent jurisdiction. See *Karan, Inc. v. Auto-Owners Ins. Co.*, 280 Ga. 545, 546 (629 SE2d 260) (2006). The plaintiffs acknowledge that there is an identity of the parties, and the Court of Appeals' decision in the prior appeal upholding the trial court's grant of summary judgment plainly constitutes an adjudication on the merits by a court of competent jurisdiction. See *Summer-Minter & Assocs. v. Giordano*, 231 Ga. 601, 604 (203 SE2d 173) (1974) (holding that "an adjudication on summary judgment is an adjudication on the merits"). The only issue, then, is whether the causes of action raised in the amended complaint were "matters put in issue or which under the rules of law might have been put in issue" in the original complaint. OCGA § 9-12-40.

The original complaint had two counts. Count 1 challenged the 2005 deed, and Count 2 challenged the 11 deeds executed from 1975-1980. The grandsons filed two motions for partial summary judgment, one attacking Count 1 of the complaint, and the other attacking Count 2 of the complaint. It is true, as the plaintiffs say, that Count 1 of their complaint challenged the grantor's mental competence to execute the 2005 deed. But that is not the only issue that Count 1 raised.

Count 1 also alleged that Danny Lockridge moved the grantor into his home, refused to allow the plaintiffs to speak with or visit the grantor, told the grantor lies about how the plaintiffs had mistreated him, and persuaded the grantor to execute the 2005 quitclaim deed naming Danny Lockridge and his wife and child as the grantees. These are allegations of undue influence, the same thing the plaintiffs allege in more detail in the "new" count they amended the complaint to include. Indeed, the plaintiffs acknowledged as much with regard to the initial motion for summary judgment on Count 1, arguing that the motion should be denied because Count 1 alleged not only mental incompetence, but "undue influence" as well.

The amended counts for cloud on title and mistake of fact also offer nothing really new. Count 1 of the original complaint specifically averred that the 2005 deed "constitutes a cloud or suspicion upon the title of the Plaintiffs" and must therefore be cancelled. Likewise, the mistake of fact the plaintiffs amended the complaint to add is that "[a]t the time of execution of the deed, the Grantor mistakenly believed that he presently owned and/or owned at one time" certain lands described in the 2005 quitclaim deed. But Count 1 alleged from the start that the 2005 deed should be set aside because it included land the grantor did not own and even some that he had never owned, which the plaintiffs alleged the grantor knew when he was mentally competent.

OCGA § 9-11-56 (e) provides that in the face of a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Code section, must set forth specific facts showing that there is a genuine issue for trial." Consequently, "in responding to a motion for summary judgment, plaintiffs have a statutory duty 'to produce whatever viable theory of recovery they might have or run the risk of an adjudication on the merits of their case.' " *Pfeiffer v. Georgia Dept. of Transp.*, 275 Ga. 827, 828 (573 SE2d 389) (2002) (citation omitted). Thus, although plaintiffs enjoy considerable leeway in amending the complaint before the entry of a pre-trial order, see OCGA § 9-11-15 (a), plaintiffs who have lost on appeal from a summary judgment ruling are not allowed to return to the trial court and amend the complaint to " 'try a new theory of recovery.' " *Summer-Minter*, 231 Ga. at 606 (citation omitted). As this Court nicely put the point a long time ago, "[n]o party, plaintiff or defendant, is permitted to stand his case before the court on some of its legs, and if it falls, set it up again on the rest in a subsequent proceeding, and thus evade the bar of the former judgment." *Perry v. McLendon*, 62 Ga. 598, 604-605 (1879). "[R]estyling the complaint in terms of a theory of recovery ascertainable in the original case," *Summer-Minter*, 231 Ga. at 605, will not revive a cause of action that was defeated on appeal from a summary judgment ruling. That is what the plaintiffs tried to do here.

Accordingly, res judicata compelled summary judgment in favor of the grandsons not only on the cloud on title count, but on the counts of undue influence and mistake of fact as well. See *Body of Christ Overcoming Church of God, Inc. v. Brinson*, 287 Ga. 485, 486 (696 SE2d 667) (2010) (affirming grant of summary judgment under the right-for-any-reason rule).

5. *Other Enumerations of Error*. The plaintiffs' remaining enumerations of error are insubstantial. The plaintiffs correctly argue

that the trial court made a factual error in the summary judgment order regarding the date the power of attorney from Virginia Smith to the grantor commenced, but that error has no bearing on the outcome of the case (and we have used the correct 1976 date in this opinion). It is evident from the face of the trial court's order that the court did not, as the plaintiffs contend, overlook the affidavits filed by the grantor's wife, one of the grantor's daughters, and a son-in-law in ruling on the motion for summary judgment. There was no abuse of discretion in declining to consider the affidavit from the grantor's tax preparer, and the trial court also did not err in construing an order it entered in a companion case. The plaintiffs' argument regarding the statute of limitation was decided adversely to the plaintiffs by the Court of Appeals, and having failed to petition for certiorari at that time, the plaintiffs cannot raise the issue now. In light of our determination that res judicata operates to bar the counts for undue influence, cloud on title, and mistake of fact, we need not address plaintiffs' other enumerations of error relating to those counts.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 8, 2010.

*Jones & Duff, Don M. Jones, Lori B. Duff, Hodges, McEachern & King, T. Kyle King*, for appellants.

*Maddox & Harding, Todd A. Harding, Foster & Hanks, Jeffrey L. Foster*, for appellees.