**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 18, 2014**

# In the Court of Appeals of Georgia

A13A2370. JOHNSON et al. v. JOHNSON et al.

MCMILLIAN, Judge.

This appeal stems from a family dispute over ownership of a parcel of land on which the family "home place" is located.[1]

In 1993, the family patriarch, A. B. Norman Johnson ("A. B." or "father"), his wife, Ada Nell Johnson ("Ada") and one of their sons, appellant Michael Randy Johnson ("Michael") were deeded one-third interests in the family home place property. A. B. also owned the land contiguous to the home place, and over the years

---

[1] We originally transferred this case to the Supreme Court on the basis that it concerned either title to land or was in the nature of an equity case, but that court determined that it did not have jurisdiction and transferred the case back to us.

he deeded parcels of this land to several of his children,[2] including Michael and another son, appellee Troy James Johnson ("Troy"). In 2004, an agreement was reached whereby Troy would deed three acres of the parcel he owned to Michael, and in return A. B., Ada and Michael would execute a deed conveying the home place parcel to Troy and his children (collectively "appellees").[3] It is this 2004 deed that is the subject of the present dispute.

Neither Troy nor his children were present when the 2004 deed was executed, and sometime later Michael brought the deed to Troy's house in an envelope. A. B. was at Troy's home at that time, and Michael told A. B. and Troy that he had recorded the deed, although in fact he had not done so. Michael handed the envelope to A. B., who then placed it in the trunk of his 1998 Lincoln automobile. A. B. did not remove the deed from the envelope, and he did not show Troy the deed or hand him the envelope before placing it in the trunk of his car. However, he told Troy, both at that time and later, that he was leaving the Lincoln to Troy when he died, and that the deed would be "right there in the trunk with [the] important papers." A. B. did in fact

---

[2] Apparently A. B. did not deed any land to his daughters because he believed their husbands should provide for them.

[3] The 2004 deed granted A. B. and Ada a life estate in the home place, and they continued to live there until they died.

leave the automobile to Troy in his will, but A. B. retained ownership and possession of the Lincoln until he died.[4] Troy testified, however, that he also had keys to the Lincoln and could access it if he wanted to, although he also testified that he had not done so and did not get the deed out of the trunk or look at it until after his father died.

In 2006, Michael executed a deed to his two sisters conveying his purported one-third interest in the home place; this deed, which referenced the 1993 deed but not the 2004 deed, was recorded on September 28, 2006. In April 2007, Ada and A. B. executed a warranty deed conveying their purported two-thirds interest in the home place property to two of their other sons, and this deed was recorded on April 24, 2007.[5] During the next few years, the grantees under the 2006 and 2007 deeds made several other conveyances of the property to relatives.

Troy testified that he knew about the 2006 and 2007 conveyances, but he never questioned his father about these conveyances because he believed they were without effect since his deed was "in front" of these other deeds. But, as stated above, he did

---

[4] Troy testified that the Lincoln was parked on his property at the time his father died, but it had only been there for about a week.

[5] A. B. was granted a life estate in the home place in a subsequent deed executed by these two sons in September 2007.

not retrieve his own deed from the trunk of the Lincoln until after A. B. died in December 2009, and that is when he learned for the first time that his deed had not been recorded.

In August 2010, appellees filed a complaint in equity to set aside the 2006, 2007 and subsequent conveyances of the home place property. Appellants, who are the grantees under these various deeds, answered and counterclaimed to remove the cloud on their title to the land. Appellees filed a motion for partial summary judgment, contending that the evidence demonstrated that there had been a legal delivery of the 2004 deed prior to the execution and recordation of the 2006 and 2007 deeds. Appellants responded and also moved for partial summary judgment, contending that A. B. retained control of the 2004 deed until his death in 2009, and thus the 2004 deed remained undelivered at the time the 2006 and 2007 deeds were executed and recorded. Following a hearing, the trial court granted summary judgment to appellees, finding that the deed had been constructively delivered to Troy pursuant to OCGA § 44-5-42. Appellants filed the present appeal, contending that the trial court's factual findings were not supported by the record, that OCGA § 44-5-42 applies to delivery of a deed to a third party escrow and has no application here, and that the trial court erred by finding as a matter of law that the deed had been delivered

4

to Troy. Without belaboring each of these points, we agree that the trial court erred by finding that the 2004 deed had been delivered and accordingly reverse the grant of summary judgment to appellees.

The law in this state concerning the making and delivery of deeds is well settled. "A deed to lands must be in writing, signed by the maker, and attested by at least two witnesses. It must be delivered to the purchaser or his representative and be made on good or valuable consideration." OCGA § 44-5-30.

> Execution of a deed without delivery is insufficient to pass title[, and delivery that passes title must be made during the lifetime of the grantor]. *Robinson v. Williams*, 280 Ga. 877, 879 (635 SE2d 120) (2006). "It is indispensable to the delivery of a deed that it pass beyond the control or dominion of the grantor; and where a grantor retains a deed which he executes in his possession and control until his death without doing anything to indicate an intention to deliver it, it is void for want of a delivery." Id. (quoting *Childs v. Mitchell*, 204 Ga. App. 542, 544 (50 SE2d 216) (1948)).

*Smith v. Lockridge*, 288 Ga. 180, 183-184 (3) (702 SE2d 858) (2010).

Although manual delivery of the deed is not always essential to effect a legal delivery of the deed, see *Childs*, 204 Ga. at 544, even where the grantor stands in a relationship of trust with the grantee, the grantor's intent to deprive himself of power

5

and control over the deed must be shown. See *Stinson v. Woodland Bank*, 154 Ga. 254, 257 (114 SE2d 181) (1922). "The true test of delivery is whether or not the grantor intended to reserve to himself the locus penitentiae, which means an opportunity for changing one's mind, an opportunity to undo what one has done, or a right to withdraw from an incomplete transaction. *Morris v. Johnson*, 219 Ga. 81, 89 (132 SE2d 45) (1963)." (Punctuation omitted.) *Lockridge*, 288 Ga. at 184.

Here, the deed was placed in the trunk of a car belonging to A. B., the original owner and one of the original grantors, and that car, according to Troy's deposition testimony, remained under A. B.'s possession and control until shortly before his death. Although Troy also testified that at some point the deed was "gonna be" in his possession and that he could have retrieved the deed from the trunk if he had wanted it, he also testified that A. B. retained possession and control of the deed and could also have opened the trunk and gained access to it at any time, even tearing it up if he had been so inclined. And although A. B. did not destroy the deed, he did subsequently convey the property to two other sons, indicating that he had changed his mind about the conveyance to Troy. Further, Troy testified that although A. B.'s eyesight failed, A. B. knew what he was doing and remained in control of his business dealings. "To make a deed effective at the time of its execution, there must

be satisfactory proof that it was the intention of the grantor that the instrument should operate to immediately convey to the grantee title to the premises therein described [and the grantor's] purpose to deprive himself of power and control over the instrument for the benefit of the grantee must be shown." *Stinson*, 154 Ga. at 257-258. Delivery of the 2004 deed to Troy was not effectuated at the time it was placed in the trunk of A. B.'s car or thereafter during the life of A. B., and summary judgment should have been granted to appellants on this issue. *Robinson v. Williams*, 280 Ga. at 878-879; *Keesee v. Collum*, 208 Ga. 382, 385 (2) (67 SE2d 120) (1951); *Hall v. Metropolitan Life Ins. Co.*, 192 Ga. 805, 807 (16 SE2d 576) (1941).

*Judgment reversed. Andrews, P. J., and Dillard, J., concur.*