**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN, P. J., and BROWN, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS
COURT. ALL FILINGS MUST BE SUBMITTED WITHIN
THE TIMES SET BY OUR COURT RULES.*

**April 22, 2021**

# In the Court of Appeals of Georgia

A20A1987. SMITH v. TIBBITS, EXECUTOR ET AL.

DILLARD, Presiding Judge.

Leslie Smith was an aspiring real estate agent when she met Wayne Tibbits—a wildly successful real estate developer—in 2004. They quickly began dating and Tibbits soon invited Smith and her two children to move into his home in Hiram, Georgia. And for the first five years of their relationship, all was well. But in 2009, Tibbits began drinking heavily and engaging in a pattern of abusive behavior. Even so, Smith remained in this Jekyll-and-Hyde relationship with Tibbits until his passing in 2018—caring for him until the very end. Now, in the wake of Tibbits's death, there is a dispute between Smith and Tibbits's son, Russell, over the ownership of the Hiram property, a 2016 white Cadillac Escalade, and certain jewelry. Smith claims that Tibbits gave her all three, while Russell maintains that they belong to his father's

estate. The only question before us is whether Smith gets to have her day in court. We conclude that she does.

This case comes to us after the trial court's grant of summary judgment in favor of Russell Tibbits, individually and as executor of the Estate of Wayne A. Tibbits.[1] Smith argues that the trial court erred in granting summary judgment against her when the evidence supported a finding that (1) a deed for realty for the Hiram property was delivered to her, (2) Wayne gifted her the white Cadillac Escalade, and (3) Wayne also gifted her certain jewelry. And because we agree with Smith that genuine issues of material fact remain as to these matters, we reverse.

Viewed *de novo* in the light most favorable to Smith (*i.e.*, the nonmovant),[2] the record shows that Wayne was a real estate developer who owned multiple homes in multiple states. In 2004, he began dating Smith, and Smith moved into Wayne's home in Hiram, Georgia. Smith quit her job as a real estate agent at Wayne's request and the two were in a mostly continuous relationship until Wayne's death in 2018. And

---

[1] From this point forward, we refer to Russell and Wayne by their first names for the sake of clarity.

[2] *See, e.g.*, *Roberson v. McIntosh Cnty. Sch. Dist.*, 326 Ga. App. 874, 874 (755 SE2d 304) (2014) ("A trial court's grant of summary judgment is reviewed de novo on appeal, construing the evidence in the light most favorable to the nonmovant.").

during the course of their relationship, Wayne gave Smith horses, money, a Range Rover, furniture, and many other things.

The couple continued living together on Wayne's Hiram property, which consisted of approximately 21 acres and included, among other things, a main dwelling, a lake house, and a horse barn. And in 2009, Wayne told Smith that he was "going to deed the [Hiram] house to [her]." So, she accompanied Wayne to his attorney's office on May 11, 2009, where they discussed the deed and Smith was given an opportunity to review and approve it. Additionally, they discussed and executed an option contract, which would give Wayne the ability to purchase the property back from Smith should the need arise.

At the conclusion of this meeting, Smith was given copies of the two documents and believed Wayne had possession of the originals. And it was her understanding that she obtained ownership of the Hiram house that day. It was also her understanding that the deed need not be recorded because Wayne continued to pay the taxes and other expenses during the course of their relationship—although Wayne did tell Smith to immediately record the deed if "something happened" to him.

Shortly after this meeting, Smith grew concerned about what would happen to the Hiram house if she died before Wayne, and so, she decided to execute a will

3

leaving the house and other assets to Wayne in the event of her death. Wayne agreed that she needed a will for this purpose, set up an appointment with one of his attorneys, hired the attorney, and accompanied Smith to the meeting.

During the final years of their sometimes tumultuous relationship (which was impacted by Wayne's substance abuse and temper), Smith continued to reside in the "main" house on the Hiram property while Wayne often stayed in the lake house. At one point, while incredibly inebriated, Wayne called the police to have Smith removed as a trespasser, claiming that he owned the property; but Smith showed officers her copy of the aforementioned deed and was allowed to remain.

In May 2017, the couple briefly separated, at which point Smith drove to Colorado in an Escalade that Wayne previously said was hers and stayed at a ranch owned by Wayne in that state. Nevertheless, she remained in contact with Wayne, who was eventually admitted to a drug-and-alcohol rehabilitation facility. After leaving rehab, Wayne flew to Colorado in October 2017 to reunite with Smith and returned again in November. Wayne then told Smith that he was ill and wished for her to return to Georgia to take care of him, which she did.

Wayne was hospitalized on February 4, 2018, and succumbed to his illness on February 23, 2018. Smith remained with Wayne at the hospital during this time. But

before Wayne passed, he gave Smith certain pieces of his jewelry (a necklace, watch, and two rings), telling her to "go ahead and take it now" because he wanted her to have it. Several weeks after his death, Smith returned to Wayne's Colorado house. And when she departed, Smith left all of her belongings in the main house because she intended to return to Hiram in a few weeks. Wayne's son, Russell, agreed to manage everything when Smith departed, provided her with new keys to locks that were changed, and gave her the alarm system code. But Russell later claimed that Smith's deed was "no good" because it was never recorded.

On October 12, 2018, Smith filed a complaint for deed and motion for temporary injunction against Russell in his various capacities. In doing so, she asserted that in May 2009, well prior to his death in March 2018, Wayne deeded his Hiram home to her. She further asserted that Wayne gifted to her the aforementioned pieces of jewelry, which Russell had since taken into his own possession and refused to return. Finally, Smith alleged that Wayne also gave her the Cadillac Escalade that she drove to Colorado, to which Russell refused to hand over title. As a result, she sought return of the jewelry, title to the Escalade, and for the court to establish fee simple title to the real property and temporarily enjoin interference with her ownership and possession of same.

Attached to Smith's complaint was a copy of the quitclaim deed executed on May 11, 2009, which purported to grant title of the Hiram property from Wayne to Smith. Additionally, Smith attached a copy of the option contract, also dated May 11, 2009, which gave Wayne the exclusive opportunity to repurchase the property from Smith for $60,000.

In response to this action, Russell denied that Smith owned the aforementioned real property, Escalade, or jewelry. He counterclaimed on grounds of conversion, trespass to personal property, trespass to realty, unjust enrichment, and sought an award of attorney fees. Russell included a copy of Wayne's last will and testament, in which Wayne left his entire estate to Russell in fee simple. Then, on August 1, 2019, Russell moved for partial summary judgment on Smith's claims of ownership and his counterclaim for conversion.

Following a hearing on the matter, the trial court granted judgment in favor of Russell, concluding that Smith had not established delivery of the deed to the real property or delivery of the Escalade, entitling Russell to his claim for conversion

6

regarding the Escalade, and that she could not show that Wayne gifted the jewelry to her.[3] This appeal by Smith follows.

The test for evaluating the grant or denial of a motion for summary judgment is whether "there remains after consideration of the pleadings, depositions, answers to the interrogatories, admissions on files and affidavits any genuine issue of material fact."[4] With the foregoing in mind, we address Smith's contentions on appeal.

1. First, Smith argues that the trial court erred in granting summary judgment to Russell when the evidence supported a finding that a deed for the real property was delivered to her. We agree with Smith that genuine issues of material fact exist on this issue and that the grant of summary judgment was improper.

In Georgia, a deed to lands shall be "in writing, signed by the maker, and attested by an officer as provided in Code Section 44-2-15, and attested by one other witness," and it shall be "delivered to the purchaser or his or her representative and

---

[3] Prior to this order, the trial court issued a consent order that authorized Russell to retain possession of the real property while Smith retained possession of the Escalade for 120 days. At the conclusion of that period, the court terminated Smith's right of possession of the Escalade but left Russell in possession of the real property.

[4] *Watkins v. Watkins*, 256 Ga. 58, 60 (1) (344 SE2d 220) (1986).

7

be made on a good or valuable consideration."[5] Indeed, the Supreme Court of Georgia

has explained that "[d]elivery is essential to the validity of a deed, and there can be

no delivery, after the death of the alleged grantor, of a deed with the possession of

which he had never in any manner parted."[6] And it is indispensable to the delivery of

a deed that it "pass beyond the control or dominion of the grantor; and where a

grantor retains a deed which he executes in his possession and control until his death

without doing anything to indicate an intention to deliver it, it is void for want of a

---

[5] OCGA § 44-5-30; *see* OCGA § 44-2-15 ("Any of the instruments enumerated in Code Section 44-2-14 may be attested by a judge of a court of record, including a judge of a municipal court, or by a magistrate, a notary public, or a clerk or deputy clerk of a superior court or of a city court created by special Act of the General Assembly. With the exception of notaries public and judges of courts of record, such officers may attest such instruments only in the county in which they respectively hold their offices."); *see also* OCGA § 44-5-80 (3) ("The gift must be delivered or some act which under law is accepted as a substitute for delivery must be done.").

[6] *Dawson v. Keitt*, 232 Ga. 10, 11 (205 SE2d 309) (1974); *accord Equitable Mortgage v. Brown*, 105 Ga. 474, 474 (2) (Syllabus) (30 SE 687) (1898) (Per Curiam); *see McCray v. Caves*, 215 Ga. 380, 382 (1) (110 SE2d 655) (1959) ("Delivery, actual or constructive, of a deed must be made during the lifetime of the grantor."); *see also Vatacs Grp., Inc. v. U.S. Bank, N.A.*, 292 Ga. 483, 486 (738 SE2d 83) (2013) ("[E]xecution and delivery of a valid deed is necessary to convey title[.]"); *Stinson v. Daniel*, 193 Ga. 844, 849 (2) (20 SE2d 257) (1942) ("The delivery of a deed is essential to the transfer of title. It is the final act without which all other formalities are ineffectual." (citation omitted)).

delivery."[7] Put another way, the true test of delivery of a deed of conveyance is "whether or not the grantor intended to reserve to himself the locus penitentiae,"[8] which is the "opportunity for changing one's mind; an opportunity to undo what one has done[;] a chance to withdraw from a contemplated bargain or contract before it results in a definite contractual liability; a right to withdraw from an incompleted transaction."[9]

---

[7] *Johnson v. Johnson*, 327 Ga. App. 604, 606 (760 SE2d 618) (2014) (punctuation omitted); *accord Smith v. Lockridge*, 288 Ga. 180, 183-84 (3) (702 SE2d 858) (2010); *Robinson v. Williams ex rel. Estate of Dunn*, 280 Ga. 877, 879 (2) (635 SE2d 120) (2006); *see Stinson v. Woodland Bank*, 154 Ga. 254, 257 (141 SE 181) (1922) ("The grantor's undisclosed intention alone that the instrument should be effective as a deed will not constitute delivery. His purpose to deprive himself of power and control over the instrument for the benefit of the grantee must be shown.").

[8] *Morris v. Johnson*, 219 Ga. 81, 89 (2) (d) (132 SE2d 45) (1963); *accord Smith*, 288 Ga. at 184 (3); *Keesee v. Collum*, 208 Ga. 382, 386 (67 SE2d 120) (1951); *Stinson*, 193 Ga. at 851 (2); *Johnson*, 327 Ga. App. at 606.

[9] *Morris*, 219 Ga. at 89 (2) (d) (citation and punctuation omitted); *accord Smith*, 288 Ga. at 184 (3); *Johnson*, 327 Ga. App. at 606-07; *see Keesee*, 208 Ga. at 386 ("So long as there remained an opportunity for him to change his mind, and this period continued until it was delivered, the title did not pass by virtue of the execution of the deed, even though it had been recorded at his own instance.").

9

But delivery may be *inferred* from various circumstances.[10] Recording a deed, a recital of delivery within a deed, a deed found in the custody of the grantee, and a grantee with possession of the relevant land are all circumstances that give rise to a

---

[10] *See Mays v. Fletcher*, 137 Ga. 27, 28 (2) (72 SE 408) (1911) ("The delivery of a deed is necessary to its validity, but delivery may be inferred from various circumstances."); *see also* OCGA § 44-5-82 ("Actual manual delivery is not essential to the validity of a gift. Any act which indicates a renunciation of dominion by the donor and the transfer of dominion to the donee shall constitute a constructive delivery."). *See generally Willingham v. Smith*, 151 Ga. 102, 118 (106 SE 117) (1921) ("The expression 'delivery,' as applied to written instruments, had its inception in connection with written conveyances of lands. Nevertheless the question of delivery seems identical, whatever the character of the deed or covenant. In the early English cases the delivery of a deed of grant was regarded as in effect the symbolical transfer of the land itself, analogous to livery of seisin. Hence a physical or manual delivery was deemed essential. Contrary to the doctrine of the earlier cases, the modern English view seems to be that delivery is largely a question of intention." (citation omitted)).

presumption of delivery or, in other words, that are prima facie evidence of delivery.[11]

Of course, the presumption of delivery is rebuttable,[12] and

_____

[11] *See Corley v. Parson*, 236 Ga. 346, 347 (1) (223 SE2d 708) (1976) (holding that presumption of delivery for recorded deed was rebutted by the fact that recordation occurred many years *after* grantor's death, but "[o]ther presumptions of delivery arise from the recital of delivery in the deed, when the deed is found in the custody of the grantee, and when the grantee has possession of the land," and plaintiffs had failed to rebut those presumptions, authorizing jury to find that belatedly recorded deed *was* properly delivered); *Whiddon v. Hall*, 155 Ga. 570, 577 (2) (118 SE 347, 350) (1923) ("The record of a deed is proof of delivery. The fact that a deed was attested by a proper officer and purported on its face to have been delivered raises a presumption of delivery. Possession of a deed by a grantee is presumptive evidence of its delivery. The delivery of a deed may be inferred from possession of the land conveyed." (citations omitted)); *Mays*, 137 Ga. at 28 (2) ("Attestation of a deed by an officer authorized to witness a deed is presumptive proof of delivery. Possession of a deed by a grantee, or one taking an interest thereunder, raises a presumption of delivery. The record of a properly executed deed is sufficient, but not conclusive, evidence of delivery." (citations omitted)).

[12] *See Morris*, 219 Ga. at 89 (2) (d) ("Although a presumption of delivery is raised by such factors as possession of the deed by the grantee, a recital of delivery in the deed's attestation clause, and reservation of a life estate by the grantor, such presumption may be rebutted by evidence that in fact the deed had not been delivered." (citations omitted)); *Fuller v. Fuller*, 211 Ga. 201, 203 (84 SE2d 665) (1954) ("Though a presumption of delivery arises from the due attestation and registration of a deed, such presumption may be rebutted by proof that the deed was never delivered."); *Stinson*, 193 Ga. at 850 (2) ("[A] statement in the attestation clause is merely prima facie evidence of delivery. Since neither of the matters mentioned raised a conclusive presumption of a delivery, the question is whether there was proof sufficient to authorize a finding by the jury that this presumption had been rebutted.").

the evidence of an unimpeached witness that the deed was not delivered raises a conflict between such presumptive evidence of delivery and such direct evidence of nondelivery, which can only be decided by the jury, as it cannot be said, as a matter of law, that the jury is bound to accept evidence as true, although not contradicted by direct evidence.[13]

And when there is "*any evidence* as to the *delivery* of a deed, it is a question of fact for the jury, and not a question for the Court to decide whether there has been a delivery of the deed."[14] To that end, in certain cases, "where the existence or nonexistence of the fact is to be determined in whole or in part from circumstances, and where reasonable [people] might draw opposite conclusions from the same undisputed testimony, it is the jury's problem to find what is the truth to be drawn therefrom."[15] Thus, it is entirely conceivable that "one jury might find one verdict and

---

[13] *McCray*, 215 Ga. at 382 (1); *see Allen v. Bemis*, 193 Ga. 556, 563 (2) (19 SE2d 516) (1942) ("The deed in question having been duly recorded, this record is presumptive evidence of its delivery. But this presumption is rebuttable, and where there is evidence of non-delivery of a deed an issue of fact arises and it is for the jury to decide whether or not the deed was in fact delivered." (citations omitted)).

[14] *Alexander & Howell v. Lieth*, 39 Ga. 180, 186 (1869); *accord Patterson v. Patterson*, 210 Ga. 359, 359 (7) (80 SE2d 310) (1954); *Whiddon*, 155 Ga. at 577 (2); *see Stinson*, 193 Ga. at 850 (2) ("Whether the facts constitute a delivery of the deed is a question of law; whether such facts exist is a question for the jury." (punctuation omitted)).

[15] *Stinson*, 193 Ga. at 850 (2).

another jury an entirely different verdict on the same evidence, and yet it could not be ruled as a matter of law that either finding is contrary to the evidence."[16]

In response to Smith's claim of ownership over the Hiram home, Russell presented an affidavit from the attorney who prepared the deed, in which he averred that Wayne was unsure of whether he wanted to "retain the property in his name, transfer it to [Russell], or put it in the name of his girlfriend, Leslie Smith." As a result, Wayne asked the attorney to "go ahead and prepare a deed transferring the property to Ms. Smith" but told the attorney "he would decide later whether he would actually proceed with the transfer." The attorney further averred that, on these orders, he prepared both the deed *and* the option agreement because Wayne wanted to be able to reacquire the property should he deed it to Smith; but he told the attorney to "hold the original Deed and Option Agreement until he decided what he wanted to do." To that end, the attorney said Smith was told Wayne's signature upon the deed was not actually titling or conveying the property to her at that time and that she "would not receive title unless and until Wayne decided he wanted to put it in her name by filing the deed." Finally, the attorney averred that he was never instructed to record or deliver the deed to Smith and, thus, the original deed and option

---

[16] *Id.*

13

agreement remained at his office. And it is undisputed that Smith never possessed the original deed, that her copy did not include a separate property description, and that the deed was never recorded.

Nevertheless, the deed contains a recital that it was "signed, sealed, and delivered" in the presence of the two witnesses required by OCGA § 44-2-15, which raises a presumption of delivery.[17] Additionally, throughout the many years that followed between execution of the deed and Wayne's death, Smith continued to live in the relevant "main" house or kept her belongings in the home while Wayne lived in the lake house. This, too, raises the presumption of delivery.[18] Nevertheless,

---

[17] *See Myers v. Phillips*, 197 Ga. 536, 541 (4) (29 SE2d 700) (1944) ("The formal execution of the deed and the language of the attestation clause raised a prima facie presumption that the deed was delivered."); *Bourquin v. Bourquin*, 110 Ga. 440, 446 (4) (35 SE 710) (1900) ("[T]he defendant caused the deed to be executed in the presence of an officer whose duty it was to see that the deed was executed in accordance with law; and, delivery being one of the essential requirements, the fact that the deed was attested by such an officer, and purports on its face to have been delivered, raises a presumption of delivery."); *Ross v. Campbell*, 73 Ga. 309, 315 (1884) (holding that proof of complete delivery included deed's attestation of delivery).

[18] *See Doolittle v. Bagwell*, 199 Ga. 155, 158 (1) (33 SE2d 437) (1945) ("We have in the instant case the further allegation that the plaintiffs went into possession of that portion of the property to which they were entitled under the terms of the deeds sought to be cancelled. This is true for the reason that, construing the petition most strongly against them, as must be done, they certainly could not agree to surrender possession if they were not in possession." (citations omitted)); *Grice v.*

14

whether other evidence successfully rebuts these presumptions is a question for a jury to resolve.[19] Accordingly, the trial court erred in granting summary judgment in Russell's favor on this matter.[20]

2. Next, Smith argues the trial court erred in granting summary judgment in favor of Russell's claim of conversion when the evidence supported a finding that

---

*Grice*, 197 Ga. 686, 693-94 (30 SE2d 183) (1944) ("[The deed] appears to have been duly attested by two witnesses, one of whom was an official so authorized by law, and the attesting clause recited delivery. This was sufficient to raise a prima facie presumption that the deed was delivered."); *Bourquin*, 110 Ga. at 446 (4) ("The fact that the grantor treats the property as the property of the grantee raises a presumption of delivery.").

[19] *See Keesee*, 208 Ga. at 387 (explaining that conflicting evidence as to delivery versus non-delivery presented question of fact for jury to resolve); *see supra* notes 13-15 & accompanying text. It is noteworthy that several of the cases relied upon by appellees are inapposite to the procedural posture of this case or do not mention attestations of *delivery*.

[20] *See McLemore v. Wilborn*, 259 Ga. 451, 451 (383 SE2d 892) (1989) (reversing grant of summary judgment when evidence created questions of fact as to whether real property was given to appellant as a gift). *Cf. Smith*, 288 Ga. at 184 (3) (affirming grant of summary judgment because "[d]elivery does not occur when a parent executes a deed naming his minor child as the grantee but retains in his possession both the unrecorded deed and the property"); *Brinson v. McMillan*, 263 Ga. 802, 802 (3) (440 SE2d 22) (1994) (holding that, although appellant did not have the original deed in her possession, "[a] copy of the deed in the record indicates that it was delivered in the presence of the witnesses, was properly witnessed to entitle it to record, and was recorded on September 19, 1977" and "[t]his evidence is sufficient to withstand summary judgment on the issue of delivery").

15

Wayne gave her the white Cadillac Escalade. Again, we agree that the trial court improperly granted summary judgment when genuine issue of material fact remain as to this issue.

To establish a *prima facie* case of conversion, Russell was required to show "title to the property or the right of possession, actual possession in defendant, demand for its return, and defendant's refusal."[21] And here, it is undisputed that the white Cadillac Escalade, which Wayne purchased in 2016, was titled in the name of Paulding County Properties, Inc. (which was solely owned by Wayne), and title was never transferred out of that entity's name. Russell averred that the Escalade was for Wayne's personal transportation while in Colorado, but that when Wayne died, Smith remained in Colorado and "took the keys to his Escalade and began driving the vehicle without [Russell's] permission." And thereafter, Smith refused Russell's demands—on behalf of Wayne's estate—to return the vehicle.

But according to Smith, Wayne told her that the white Cadillac Escalade was hers as a gift and that he would buy another one for himself, which he did. Smith testified that she was thereafter in exclusive possession of the Escalade since its

---

[21] *Hooks v. Cobb Ctr. Pawn & Jewelry Brokers, Inc.*, 241 Ga. App. 305, 308 (5) (527 SE2d 566) (1999); *accord Trey Inman & Assoc., P.C. v. Bank of Am., N.A.*, 306 Ga. App. 451, 457 (4) (702 SE2d 711) (2010).

16

purchase in 2016 and drove it to and from Georgia and Colorado while Wayne drove a black Cadillac Escalade. And shortly before his death, Wayne told Smith that he "need[ed] to title [the Escalade] to [her]."[22] As a result, Smith asserted that, title notwithstanding, she was the rightful owner of the Escalade because it was a gift to her from Wayne.

As we have previously explained, after a *prima facie* case of ownership is established by showing title, the defendant has the burden of overcoming the *prima facie* case.[23] This may be done by proffering evidence that an item, such as a vehicle, was a gift.[24] But to constitute a valid *inter vivos* gift, the donor must intend to give the

---

[22] Wayne had previously given Smith a Range Rover, which remained in Georgia and was titled in her name.

[23] *McKinney v. Timber Equip., Inc.*, 160 Ga. App. 900, 900 (288 SE2d 610) (1982).

[24] *See McKinney*, 160 Ga. App. at 900 ("It is well established that all kinds of personal property which are capable of manual delivery and of which the title either legal or equitable can be transferred by delivery may be the subject-matter of a valid gift." (punctuation omitted)); *see also Underwood v. Underwood*, 43 Ga. App. 643, 645 (6) (159 SE 725) (1931) ("To recover in a trover case it is essential that the plaintiff show either title or right of possession, and in some cases it is necessary to establish both. Thus, in the instant case, if the intestate did in truth execute and deliver the gift, as claimed by the defendant, the defendant thereby obtained such a right of possession as would defeat the administrator's action of trover, regardless of whether the defendant may have acquired such legal title as would authorize her to proceed by suit in her own name against the obligors in the choses in action."

17

gift, the donee must accept the gift, and the gift "must be delivered or some act which under law is accepted as a substitute for delivery must be done."[25] But on the question of delivery, "[a]ctual manual delivery is not essential to the validity of a gift," and "any act which indicates a renunciation of dominion by the donor and the transfer of dominion to the donee shall constitute a constructive delivery."[26] Suffice it to say, "[t]he delivery of keys to personal property accompanied by a declaration that the donor is giving the property to the donee is sufficient evidence to sustain a finding that there has been a constructive delivery of the object."[27]

Viewing the record in the light most favorable to Smith, as we must,[28] there is sufficient evidence to create a genuine issue of material fact as to true ownership of the white Cadillac Escalade and, thus, the trial court erred in granting summary

---

(citation omitted)).

[25] OCGA § 44-5-80 (1)-(3).

[26] OCGA § 44-5-82.

[27] *Banks v. Harvey*, 98 Ga. App. 196, 196 (1) (105 SE2d 341) (1958); *see Underwood*, 43 Ga. App. at 644-45 (3) (evidence was sufficient to support finding of a valid gift when parent called daughter into room and delivered to her keys to safety deposit box situated in bank and keys to other personalty, only part of which was in room, with statement of contents of safety deposit box, and that daughter could have everything).

[28] *See supra* note 2.

18

judgment to Russell on his claim for conversion.[29] Indeed, although both the trial court and Russell assert that Smith's testimony was merely self-serving, it was not conclusory or unsupported.[30] She not only testified that Wayne told her that he was giving her the white Cadillac Escalade but that he also said he would buy another Escalade for himself, and it is undisputed that he later purchased and drove a black Cadillac Escalade. Of course, on a motion for summary judgment, when "it appears that the credibility of a witness or witnesses upon whose testimony the grant of the

---

[29] *Cf. Banks*, 98 Ga. App. at 196 (3) (holding, in action by estate to recover automobile, that evidence supported trial court's verdict in favor of common-law wife to whom intestate gave keys to newly purchased automobile on the day prior to his death and told her he was giving it to her though title was not in her name); *Hise v. Morgan*, 91 Ga. App. 555, 556 (3) (86 SE2d 374) (1955) (holding that the issue of whether an automobile was a gift or properly subject to trover was a question of fact for a jury to resolve in light of conflicting evidence, and appellate court would not overturn verdict when evidence supports jury's verdict).

[30] *Cf. Mullis v. Welch*, 346 Ga. App. 795, 800 (2) (c) (815 SE2d 282) (2018) (holding that self-serving and conclusory statements in affidavit as to decedent's mental state and siblings' alleged undue influence "over the years" did not create a genuine issue of material fact when the statements were unsupported by specific facts); *Miller v. Calhoun/Johnson Co.*, 230 Ga. App. 648, 650 (3) (b) (497 SE2d 926) (1998) ("Although [appellant] testified that when he signed the note, 'I did not feel like I owed Williams Brothers any money,' and that 'I agreed to sign the note under protest,' such assertions are not supported by any corroborative evidence. Although [appellant] may well have had an opinion that Williams had miscalculated the outstanding balance, he failed to offer any evidence to support his belief. Conclusory statements in affidavits unsupported by factual evidence are insufficient to avert summary judgment.").

summary judgment depends is at issue in the case, neither the trial court nor this court will resolve the matter or is concerned with the credibility but will leave this matter to the jury."[31] Thus, the trial court was not entitled to discount Smith's testimony in these circumstances merely because it was arguably self-serving.[32]

3. Finally, Smith argues that the trial court erred in granting summary judgment to Russell when the evidence supports a finding that Wayne gave her the jewelry at issue. Once again, we agree that there are genuine issues of material fact remaining as to this dispute.

On this issue, the trial court ruled in Russell's favor after concluding that Smith could not satisfy her burden of showing that Wayne made an enforceable gift of the jewelry when her only evidence amounted to her own statements. But for the reasons already given in Division 2 *supra*, the trial court erred by granting summary judgment on this basis.

---

[31] *Patterson v. Wright*, 354 Ga. App. 286, 288 (2) (840 SE2d 762) (2020); *accord Harding v. Ga. Gen. Ins. Co.*, 224 Ga. App. 22, 25 (479 SE2d 410) (1996).

[32] *See Peach Blossom Dev. Co., Inc. v. Lowe Elec. Supply Co.*, 300 Ga. App. 268, 271 (684 SE2d 398) (2009) ("Nor was the trial court entitled to discount [the] affidavit because it was self-serving. Such an argument asks this Court to weigh . . . credibility, but on summary judgment, neither we nor the lower court may consider the credibility of witnesses, which is a matter for the jury to resolve." (punctuation omitted)); *see also supra* note 31 & accompanying text.

Russell averred that approximately one month after Wayne's death, Smith told him that his father removed jewelry before entering the hospital for a final time and that she was holding it for safe keeping. And when Russell asked Smith for the jewelry, she gave it to him. Russell said his father never told him that he had given the jewelry to Smith, and Russell "believed" Wayne would have done so because the jewelry was "very special to [Wayne]."

On the other hand, through her testimony, Smith put forth evidence that she gave the jewelry to Russell because she was "being transparent" and because he wanted to place the jewelry in Wayne's safety deposit box "until the Will [was] executed (sic)." Indeed, when Smith gave Russell the jewelry, she told him that she had worn it the day before and that Wayne had given her the jewelry, to which Russell responded, again, that the jewelry was merely being placed in the safety deposit box temporarily. Smith trusted that Russell would return the jewelry, though she did not understand why he wanted it; but she did not want to argue with him at such a sensitive time.

Smith further testified that Wayne told her for years that she could have the jewelry, which she sometimes wore, but weeks before he was hospitalized for the final time, he told her to "go ahead and take it now" because he "want[ed] [her] to

have it." At that point, she took possession of the jewelry and, upon returning to the main house, placed it in a kitchen drawer with other important items. From this testimony, the credibility of which a jury must weigh, there is evidence sufficient to withstand summary judgment, and the trial court erred in granting summary judgment in Russell's favor on this dispute as well.[33]

For all these reasons, we reverse the trial court's grant of summary judgment.

*Judgment reversed. Rickman, P. J, and Brown, J., concur.*

---

[33] *See supra* note 32.